# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 94-CA-01008-SCT

*ERNEST RICHMOND*

*v.*

*BENCHMARK CONSTRUCTION CORP.*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/19/94 |
| TRIAL JUDGE: | HON. ROBERT LEWIS GIBBS |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | LANCE L. STEVENS |
| ATTORNEY FOR APPELLEE: | ROGER C. RIDDICK |
| NATURE OF THE CASE: | CIVIL - TORTS (OTHER THAN PERSONAL INJURY AND PROPERTY DAMAGE) |
| DISPOSITION: | AFFIRMED - 4/10/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 5/1/97 |

**BEFORE DAN LEE, C.J. , PITTMAN AND MILLS, JJ.**

**MILLS, JUSTICE, FOR THE COURT:**

¶1. Ernest Richmond appeals a summary judgment entered against him by the Circuit Court of Hinds County.

¶2. Richmond worked for United Piping Systems, Inc.(UPS). UPS maintained workers' compensation insurance coverage on all its workers, including Richmond, at all relevant times to this suit. On August 17, 1992, Richmond was injured while working on a renovation project at a Jitney Jungle store located on Highway 80 in Brandon, Mississippi.

¶3. UPS had subcontracted to perform plumbing work for the renovation project with the general contractor, Benchmark Construction Company (Benchmark).

¶4. Both the President of Benchmark and the President of UPS agreed that a condition of the subcontract was that UPS secure workers' compensation coverage for its employees. However, Benchmark had no written agreement requiring UPS to maintain worker's compensation coverage on the Jitney renovation project. UPS's insurance agent never issued a "Certificate of Insurance" to Benchmark. Nevertheless, UPS maintained workers compensation insurance covering its employees

at all times relevant to this case.

¶5. Based on the evidence summarized above, both parties moved for summary judgment. Benchmark moved to dismiss the case. Richmond moved for partial summary judgement asking the trial court to dismiss the statutory employer/exclusivity defense. The trial court below granted summary judgment in favor of Benchmark.

## STANDARD OF REVIEW

¶6. Rule 56(c) of the Mississippi Rules of Civil Procedure allows summary judgment where there are no genuine issues of material fact such that the moving part is entitled to judgment as a matter of law. To prevent summary judgment, the non-moving party must establish a genuine issue of material fact by means allowable under the Rule. *Lyle v. Mladinich*, 584 So. 2d 397, 398 (Miss. 1991).

¶7. This Court employs a *de novo* standard of review in reviewing a lower court's grant of summary judgment. *Short v. Columbus Rubber & Gasket Co., Inc.*, 535 So. 2d 61, 63 (Miss. 1988). Evidentiary matters are viewed in the light most favorable to the non-moving party. *Palmer v. Biloxi Regional Medical Center, Inc.*, 564 So. 2d 1346, 1354 (Miss. 1990). If any triable issues of fact exist, the lower court's decision to grant summary judgment will be reversed. Otherwise, the decision is affirmed. *Brown v. Credit Center, Inc.*, 444 So. 2d 358, 362 (Miss. 1991).

¶8. In *Brown*, this Court stated:

> When a motion for Summary Judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, Summary Judgment if appropriate shall be entered against him.

*Id.* at 364, quoting Miss. Rule Civ. Proc. 56(e).

¶9. The party opposing the motion must be diligent. *Grisham v. John Q. Long V.F.W. Post*, 519 So. 2d 413, 415 (Miss. 1988). The non moving party "remains silent at her peril. For one thing, the non-movant may not rest upon allegations or denials in her pleadings . . . Rather, the party opposing the motion must by affidavit or otherwise set forth specific facts showing that there are indeed genuine issues for trial." *Fruchter v. Lynch Oil Co*., 522 So. 2d 195, 198-99 (Miss. 1988).

## THE LAW

**I. Whether the statutory "exclusive remedy" provisions bar the Plaintiff's claim for damages.**

¶10. Section 71-3-9 of the Mississippi Code, in relevant part, reads:

> The liability of an employer to pay compensation shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next-of-kin, and anyone otherwise entitled to recover damages at common law or otherwise from such employer on account of such injury or death, except that if an employer

fails to secure payment of compensation as required by this chapter, an injured employee, or his legal representative in case death results from the injury, may elect to claim compensation under this chapter, or to maintain an action at law for damages on account of such injury or death. In such action the defendant may not plead as a defense that the injury was caused by the negligence of a fellow servant, nor that the employee assumed the risk of his employment, nor that the injury was due to the contributory negligence of the employee.

Miss. Code Ann. § 71-3-9 (1972).

¶11. Section 71-3-7, in pertinent part, reads:

Every employer to whom this chapter applies shall be liable for and shall secure the payment to his employees of the compensation payable under its provisions.

In the case of an employer who is a subcontractor, the contractor shall be liable for and shall secure the payment of such compensation to employees of the subcontractor, unless the subcontractor has secured such payment.

Miss. Code Ann. § 71-3-7 (1972).

¶12. In *Doubleday v. Boyd Constr. Co.*, 418 So. 2d 823 (Miss. 1982), this Court faced an similar situation where the contractor contractually required the subcontractor to obtain workers' compensation insurance. The worker was injured on the job and the subcontractor's insurance carrier paid compensation benefits. *Id.* at 418. The worker sued the contractor in tort. The Court stated that "the Legislature did not intend to subject a general contractor to common law liability if he complied with § 71-3-7 by requiring the subcontractor to have workers' compensation insurance." *Id.* at 826.

¶13. Initially, Richmond argues that a general oral agreement between Benchmark and UPS is insufficient for the Court to hold Benchmark "secured" payment. We find that such oral agreement is satisfactory under the facts of this case. Had the Legislature sought to require a "written" agreement, it could have so required. Richmond also argues that the agreement was merely alleged. However, Richmond provides the Court with no authority requiring Benchmark to have entered into a job specific written agreement with UPS in order to maintain a defense of exclusivity/statutory employer.

¶14. We note that the oral agreement is supported by the undisputed affidavit of Eddie Conger, President of UPS, and the deposition and affidavit of Joseph David Marsh III, President of Benchmark. No proof opposing these facts was offered by the plaintiff. The party opposing the motion must be diligent. *Grisham v. John Q. Long V.F.W. Post*, 519 So. 2d 413, 415 (Miss. 1988). The non-moving party

remains silent at her peril. For one thing, the non-movant may not rest upon allegations or denials in her pleadings . . . Rather, the party opposing the motion must by affidavit or otherwise set forth specific facts showing that there are indeed genuine issues for trial.

*Fruchter v. Lynch Oil Co*., 522 So. 2d 195, 198-99 (Miss. 1988).

¶15. In the present case, Richmond relies on nothing to disprove the proof that there was a longstanding oral agreement between Benchmark and UPS that UPS would carry workers'

compensation insurance as a condition of working as a subcontractor on various Benchmark jobs. Thus, the trial court properly found for Benchmark on this issue.

## II. Whether *Doubleday v. Boyd Construction Company* and its progeny are applicable?

¶16. Richmond's next argument is that Benchmark is not the type of contractor afforded the protection of the statutory employer's exclusivity defense as set forth under *Doubleday*. Richmond argues that he falls in the exception to this defense noted by the cases of *Magee v. Transcontinental Gas Pipe Line Corp.*, 551 So. 2d 182 (Miss. 1989); *Nash v. Damson Oil*, 480 So. 2d 1095 (Miss. 1985); and *Falls v. Mississippi Power & Light*, 477 So. 2d 254 (Miss. 1985). In each of these cases, a non-general contractor party who owned property interests on the site where the injury occurred was sued. The Court held in each of these cases that the property owners could not assume the posture of a contractor. Where those defendants had no responsibility under the Workers' Compensation Act, they therefore enjoyed none of the benefits of the act.

¶17. The *Falls, Damson,* and *Magee* line of cases are inappropriate to Richmond. Benchmark is the contractor of the Jitney renovation contract, not the owner of the property.

## III. Whether the *Doubleday* "statutory employer" doctrine has been abandoned by this Court.

¶18. Richmond asks the Court to overrule *Doubleday*. He relies predominantly on Justice Sullivan's special concurrence in *Nash v. Damson Oil*. There Justice Sullivan stated: "It is a complete fiction to suggest that the contractor in these cases has 'secured' the payment of compensation to the injured employees of the subcontractors. In each of these cases , the compensation was secured by the subcontractor/employer." *Nash v. Damson Oil Corp.*, 480 So. 2d 1095, 1102 (Miss. 1985) (Sullivan, J., specially concurring).

¶19. Justice Sullivan argued that where the contractor did not in fact "secure" workers' compensation insurance it would be liable in tort for any negligent act on its job site which injured a subcontractor's employee.

¶20. This argument is misplaced. The language in *Doubleday* unfortunately focuses on the verb "secure." The statute in fact reads, "In the case of an employer who is a subcontractor, the contractor shall be liable for and shall secure the payment of such compensation to employees of the subcontractor, *unless* the subcontractor has secured such payment." (Emphasis added.) The emphasis should not be on the verb "secure" but on the relationship between the parties. The statute does not require the contractor to put a condition in a contract. The statute makes the contractor stand in the place of the subcontractor, if the subcontractor fails to obtain workers' compensation coverage.

¶21. As a practical matter, the prime contractor will want (and require) the subcontractor to have coverage, and the wise contractor will have in place coverage which protects him from the failure of the subcontractor to so do. The statute accomplishes the important purpose of creating a duty in the contractor to fulfill the subcontractor's duties, should the subcontractor fail to fulfill its part of the historical bargain created by the workers' compensation statutes. If a contractor-subcontractor relationship exists, the employee of a subcontractor covered by workers' compensation insurance is prohibited from making a common law claim for negligence or gross negligence against the

contractor.

¶22. We decline to overrule *Doubleday*, and continue to follow its longstanding precedent.

## CONCLUSION

¶23. The judgment of the Circuit Court of Hinds County is affirmed.

¶24. **AFFIRMED.**

**LEE, C.J., PRATHER, P.J., PITTMAN, ROBERTS AND SMITH, JJ., CONCUR. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SULLIVAN, P.J. AND BANKS, J.**

**McRAE, JUSTICE, DISSENTING:**

¶25. I disagree with the majority's perfunctory affirmance of the circuit court's grant of summary judgment in favor of Benchmark Construction Company. Today's decision permits a primary contractor to claim statutory employer status on the basis of an alleged oral agreement with a subcontractor requiring the subcontractor to provide workers' compensation insurance for its employees. In so ruling, the majority overlooks the fact that its decision not only precludes Richmond from pursuing a tort action against the general contractor to recover damages not covered by workers' compensation, but also his employer, United Piping Systems, is penalized for providing compensation coverage for its employees since neither it nor its insurance carrier can exercise their rights of subrogation by joining or intervening in Richmond's case. Moreover, affording such a broad interpretation to the statutory employer immunity provided for in Miss. Code Ann. § 71-3-7 not only penalizes subcontractors and their insurance carriers, but also provides a disincentive for general contractors to provide a safe work site for their employees and those of the subcontractors they hire. Accordingly, I dissent.

¶26. In *Doubleday v. Boyd Construction Co.*, 418 So. 2d 823 (Miss. 1982), the frequently criticized case upon which the majority relies, the Court explained:

Although Miss. Code Ann. § 71-3-9 (1972), dictates workmen's compensation as an employee's exclusive remedy against his employer, Miss. Code Ann. § 71-3-71 (1972), grants the employee or his dependents the right to sue at law "any other party." The question thus becomes one of determining who is a "third party" within the meaning of the statute. The section which we must construe is Miss. Code Ann. § 71-3-7 (1972), which states in part:

Every employer to whom this chapter applies shall be liable for and shall secure the payment to his employees of the compensation payable under its provisions.

In the case of an employer who is a subcontractor, the contractor shall be liable for and shall secure the payment of such compensation to employees of the subcontractor, unless the

subcontractor has secured such payment.

418 So. 2d at 825. The ***Doubleday*** Court expressed its perception of the Legislature's intent in granting immunity from tort litigation to some prime contractors, stating, "It is our opinion the legislature did not intend to subject a general contractor to common law tort liability if he complied with § 71-3-7 by requiring the subcontractor to have workmen's compensation insurance." ***Id***. at 826. Looking at ***Mosley v. Jones,*** 224 Miss. 725, 80 So. 2d 819 (1955), where a prime contractor was found to have protected itself from tort liability by providing workers' compensation insurance for employees of its subcontractors, the ***Doubleday*** Court concluded that Boyd similarly protected itself by contractually requiring its subcontractors to carry insurance on their employees. ***Doubleday***, 418 So. 2d at 826-827. ***See also Morris v. W.E. Blain & Son***, 511 So. 2d 945 (Miss. 1987)(prime contractor held to be statutory employer where contracts between subcontractors as well as with prime contractor required subcontractors to provide workers' compensation coverage for employees). In the case *sub judice*, however, we have only an alleged oral agreement between Benchmark and UPS that the subcontractor would provide coverage.

¶27. In ***Nash v. Damson Oil Corp.***, 480 So. 2d 1095 (Miss. 1985), both the majority and concurring opinions addressed ***Doubleday's*** misguided emphasis on the general contractor's contractual requirement that the subcontractor provide compensation coverage for its employees. Noting Damson's assertion that it was entitled to immunity because it required the subcontractor, Trigger (Nash's employer), to provide compensation coverage, the majority in ***Nash*** observed:

> The argument proves too much, for carried to its rational limits it would mean that any time A has a contractual relationship with B, A, by contract requiring B to secure compensation coverage for B's employees, would be entitled to the protections of the exclusiveness of liability provisions of the Act, even though A be a grievous tortfeasor.

***Nash***, 480 So. 2d at 110. As the concurring opinion further recognizes, regardless of any contract requirement, subcontractors as "employers" are required independently to procure coverage pursuant to the Workers' Compensation Act.

> Doubleday emphasizes - and Damson Oil argues - that some significance ought to attach to the fact that the contract between the contractor [Boyd, MP & L, Damson] and the subcontractor [Ratliff, Deviney, Trigger] required each subcontractor to purchase and obtain in effect workers' compensation insurance. What this notion overlooks is that in each of these cases the subcontractor was independently obligated to secure compensation insurance. Each of these subcontractors is an "employer" within Mississippi Code Annotated § 71-3-3(e) who would have been statutorily obligated to afford compensation under the Act if the contract were wholly silent. Leaving the contract aside, each of these subcontractors would have been guilty of a misdemeanor had it failed to secure compensation and would have been subject to punishment by fine or imprisonment or both. Miss. Code Ann. § 71-3-83 (1972).
>
> It is a complete fiction to suggest that the contractor in these cases has "secured" the payment of compensation to the injured employees of the subcontractors. In each of these cases, the compensation was secured by the subcontractor/employer. Under Section 71-3-7, the contractor need secure compensation only when the subcontractor has failed to do so. Since the subcontractors in these three cases did not default on their statutory obligations, the

contractor's secondary obligation never matured. Therefore, the contractors were not "liable for" and did not "secure" the payment of compensation under Section 71-3-7.

The fact that the employers acted above and beyond their statutory obligations by arranging for the subcontractor to provide compensation insurance (which the subcontractors were already statutorily obligated to do) is beside the point. Because the subcontractors met their Section 71-3-7 obligations, the contractors' duty was never triggered and the contractors therefore had no opportunity to default on or satisfy their statutory obligations.

*Nash,* 480 So. 2d at 1103 (Sullivan, J., specially concurring). *Doubleday's* grant of immunity from tort liability to prime contractors merely because they require any subcontractor working for them to provide workers' compensation insurance for its employees, as *Nash* suggests, defies logic. Extending that immunity where there is merely an alleged oral agreement to provide coverage highlights the concerns raised in *Nash.*

¶28. While today's decision is good for Benchmark, it is not good for business. Subcontractors are penalized for complying with the workers' compensation statutes and, along with their insurance carriers, are precluded from exercising their statutory right to join or intervene in a tort action against a third party when the third party is a prime contractor. No incentive is provided for prime contractors to worry about safety at the construction site. Accordingly, I dissent.

**SULLIVAN, P.J., AND BANKS, J., JOIN THIS OPINION.**