## IN THE SUPREME COURT OF MISSISSIPPI

### NO. 2002-EC-00822-SCT

*JACOB M. RUSH*

*v.*

*CAROL M. IVY*

| | |
|---|---|
| DATE OF JUDGMENT: | 5/8/2002 |
| TRIAL JUDGE: | HON. GRAY EVANS |
| COURT FROM WHICH APPEALED: | HUMPHREYS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | ELLIS TURNAGE |
| ATTORNEY FOR APPELLEE: | BEN J. PIAZZA, JR. |
| NATURE OF THE CASE: | CIVIL - ELECTION CONTEST |
| DISPOSITION: | AFFIRMED - 09/11/2003 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**EASLEY, JUSTICE, FOR THE COURT:**

**STATEMENT OF THE CASE**

¶1.     On June 5, 2001, the City of Belzoni (Belzoni) held a municipal general election with Jacob M. Rush (Rush) and Carol M. Ivy (Ivy) as the candidates for alderman ward 3. The tallied returns resulted in 74 votes for Rush and 75 votes for Ivy (including 12 absentee votes for Ivy). Twelve ballots were rejected by the pollworkers and not counted.

¶2.     The Belzoni Election Commission (BEC), on June 6, 2001, certified Ivy as the winner with the final results for alderman ward 3 as 76 votes for Rush and 77 votes for Ivy. Twenty-seven affidavit ballot votes were cast. The BEC reviewed the 27 affidavit ballots cast in said election, accepted four and rejected the

remaining 23 affidavit ballot votes. The 4 accepted affidavit ballot votes were split between Rush and Ivy with each receiving 2 votes.

¶3.     The 4 accepted affidavit ballots were cast by the following voters:

Anthony Hart
Anita Shaffer
Magaret Davis
Jeanette Hart

¶4.     The 23 affidavit ballot votes that were rejected were never opened or counted. According to Rush's complaint, the following 23 affidavit ballot votes were unopened and not counted[1]:

| | |
|---|---|
| Cleo (Pitts) Hayes | Eva Mae Shatter |
| Annette Brown | Lula M. (Mae) Johnson |
| Ethel (Lee) (Brown) Robinson | Benny L. Wolford |
| Johnny Lee Taylor | Serita Wheeler |
| Irving Blanton (Jr.) | Nittkea Shatter |
| Lorraine Sims | Marcus Hooker |
| Mary L. Sims | Jackie (Todd) Carrodine |
| Wilbert E. Smith | Sherron Sutton |
| Larry Griffin | Dwight A. Guthrie |
| Edna Weathersby | Robert D. Davis |
| Dorothy Hooker | Tequila Gowdy |
| Jimmy (Ray) Sims | |

¶5.     The joint examination of the ballot box, conducted under the auspices of the trial court, showed that of all of the tally sheets tallied by the election managers resulted in 75 votes for Ivy and 74 votes for Rush. With the 4 affidavit ballots that were accepted by the BEC, 2 for Ivy and 2 for Rush, the vote totals were 77 votes for Ivy and 76 for Rush.

---

[1] Lorraine Sims, Edna Weathersby (registered for federal elections only), Serita Wheeler, Marcus Hooker and Robert D. Davis were not registered to vote on either the county or the city voter rolls.

¶6.     Rush filed suit pursuant to § 23-15-951 of the Mississippi Election Code contesting the election results.  This Court appointed retired Circuit Judge Gray Evans as the special judge to preside over this matter.  After an examination by the parties of the ballot box under the order and auspices of the trial court, Ivy filed an amended counterclaim.

¶7.     Ivy filed her motion to dismiss and/or for summary judgment, and Rush filed his response to Ivy's motion.  After conducting a hearing, the trial court granted Ivy's motion to dismiss and/or for summary judgment.  The trial court entered its finding of fact and conclusions of law and its final judgment granting Ivy's motion to dismiss and/or for summary judgment.  The trial court also granted Ivy's counterclaim and established the actual results of the alderman election ward 3 on June 5, 2002, as 77 votes for Ivy and 75 votes for Rush.[2]  Rush now appeals to this Court.

¶8.     On appeal, Rush raises the following issues:

I.      **Whether the trial court erroneously granted Ivy's motion to dismiss and/or for summary judgment.**

II.     **Whether the trial court correctly interpreted, construed and applied the provisions of Miss. Code Ann. § 23-15-14 and Miss Code Ann. § 23-15-13.**

III.    **Whether or not the affidavit ballot votes cast by Sherron Sutton and Dwight A. Guthrie should have been opened and counted.**

## DISCUSSION

### I. Motion to Dismiss and/or for Summary Judgment

**A. Tallied Vote Count**

---

[2] One of the regular ballots counted in the election that was cast for Rush was not initialed on the back of the ballot.  The trial court granted Ivy's counterclaim that the ballot was not initialed as required by § 23-15-541.  Rush does not raise this on appeal.

¶9. While much of Rush's argument on appeal is both convoluted and at times without sufficient information to support his claims, the primary focus of Rush's appeal is (1) how Miss. Code Ann. §§ 23-15-14 & 23-15-13 (Rev. 2001) should be interpreted, construed, and applied, and (2) the trial court's ruling in favor of Ivy's motion to dismiss and/or for summary judgment on this point.[3] Miss. Code Ann. §§ 23-15-14 and 23-15-13 will be fully addressed in Issue II, however, the remaining argument raised by Rush in this assignment of error concerns whether the votes were tallied correctly. Specifically, Rush contends that the total number of ballots shown on the June 5, 2001, official recapitulation (tally) sheets was incorrect and the correct vote should have been Rush 77, Ivy 75.

¶10. The trial court granted summary judgment in favor of Ivy, stating in its findings of fact and conclusions of law:

> The [f]irst [c]ause of [a]ction in the [c]omplaint alleges that the total number of ballots shown on the June 5, 2001, official recapitulation sheets in the [a]lderman [w]ard 3 election in the City of Belzoni is incorrect and that the correct total should be Mr. Rush 77 (sic) and Mrs. Ivy 75 (sic).[4]
>
> The joint examination of the ballot box under the Court's auspices showed that all of the Tally Sheets signed by the mangers of the election tallied 75 votes for Mrs. Ivy and 74 votes for Mr. Rush. When the four Affidavit Ballots accepted by the Belzoni Election Commission (there were two for Mrs. Ivy, two for Mr. Rush) are added to these totals it equals the certified results of 77 votes for Mrs. Ivy and 76 votes for Mr. Rush.
>
> The actual counted ballots copied during the joint examination also total the same as the certified results, including the regular ballots actually counted during the election (63 votes for Mrs. Ivy and 74 votes for Mr. Rush), the 12 absentee ballots counted for Mrs. Ivy; and the four counted affidavit ballots (two Mrs. Ivy and two for Mr. Rush).
>
> Mrs. Ivy is entitled to summary judgment that the actual ballots counted and certified as the results of the Ward 3 election by the Belzoni Election Commission total 77 votes for Mrs. Ivy and 76 votes for Mr. Rush.

---

[3] Both briefs at times contain errors, misstatements and incorrect figures which can be unintentionally misleading. However, the record speaks for itself.

[4] The record should reflect Rush 76 and Ivy 77.

¶11.    Ivy filed a counterclaim that one of the ballots counted for Rush should not have been counted because it was not initialed as required by Miss. Code Ann. § 23-15-541 (Rev. 2001). The trial court granted summary judgment for Ivy on her counterclaim determining that the actual results of the alderman ward 3 election held on June 5, 2001, were 77 votes for Ivy, 75 votes for Rush. The trial court entered its final judgment dismissing Rush's complaint with prejudice and finding that the results of the election were 77 votes for Ivy and 75 votes for Rush.

¶12.    Summary judgment is an appropriate procedural device capable of being utilized in election disputes. *Lewis v. Griffith*, 664 So.2d 177, 187-88 (Miss. 1995); *Stringer v. Lucas*, 608 So.2d 1351, 1358 (Miss. 1992). Furthermore, Miss. Code Ann. § 23-15-951 (Rev. 2001) does not mandate that all issues in an election contest must be tried by a jury. *Id*. This Court applies a de novo standard of review on appeal from a grant of summary judgment by the trial court. *Jenkins v. Ohio Cas. Ins. Co.*, 794 So.2d 228, 232 (Miss. 2001); *Russell v. Orr*, 700 So.2d 619, 622 (Miss. 1997); *Richmond v. Benchmark Constr. Corp.*, 692 So.2d 60, 61 (Miss. 1997); *Northern Elec. Co. v. Phillips*, 660 So.2d 1278, 1281 (Miss. 1995). Rule 56(c) of the Mississippi Rules of Civil Procedure provides that summary judgment shall be granted by a court if "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is not genuine issues as to any material fact...." M.R.C.P. 56(c).

¶13.    The moving party has the burden of demonstrating that there is no genuine issue of material fact in existence, while the non-moving party should be given the benefit of every reasonable doubt. *Tucker v. Hinds County*, 558 So.2d 869, 872 (Miss. 1990). *See also Heigle v. Heigle*, 771 So.2d 341, 345 (Miss. 2000). "If, in this view, there is no genuine issues of material fact and, the moving party is entitled to judgment as a matter of law, summary judgment should forthwith be entered in his favor. Otherwise,

5

the motion should be denied." ***Williamson v. Keith***, 786 So.2d 390, 393 (Miss. 2001). "Issues of fact sufficient to require denial of a motion for summary judgment obviously are present where one party swears to one version of the matter in issue and another says the opposite." ***Tucker***, 558 So.2d at 872.

> Of importance here is the language of the rule authorizing summary judgment 'where there is no genuine issue of *material* fact.' The presence of fact issues in the record does not per se entitle a party to avoid summary judgment. The court must be convinced that the factual issue is a material one, one that matters in an outcome determinative sense...the existence of a hundred contested issues of fact will not thwart summary judgment where there is not genuine dispute regarding the material issues of fact.

***Simmons v. Thompson Mach. of Miss., Inc.***, 631 So.2d 798, 801 (Miss. 1994) (citing ***Shaw v. Burchfield***, 481 So.2d 247, 252 (Miss. 1985)). The evidence must be viewed in the light most favorable to the non-moving party. *See **Russell***, 700 So.2d at 622; ***Richmond***, 692 So.2d at 61; ***Northern Elec. Co.***, 660 So.2d at 1281; ***Simmons***, 631 So.2d at 802; ***Tucker***, 558 So.2d at 872.

¶14.    To avoid summary judgment, the non-moving party must establish a genuine issue of material fact within the means allowable under the Rule. ***Richmond***, 692 So.2d at 61 (citing ***Lyle v. Mladinich***, 584 So.2d 397, 398 (Miss. 1991)). "If any triable issues of fact exist, the lower court's decision to grant summary judgment will be reversed. Otherwise, the decision is affirmed." ***Richmond***, 692 So.2d at 61.

¶15.    The trial court granted summary judgment reasoning that the actual ballots counted and certified by the BEC for ward 3 were 77 votes for Ivy and 76 votes for Rush. However, the trial court, in its finding of facts and conclusions of law, subsequently granted Ivy summary judgment upholding her counterclaim. Based on the counterclaim that one of the ballots cast for Rush was not initialed as required by Miss. Code Ann. § 23-15-541, the trial court determined the results to be 77 votes for Ivy and 75 votes for Rush. This Court finds that the trial court's finding of summary judgment concerning how the votes were tallied is without merit.

## B. 11 "Spoiled" Ballots

¶16.    In Rush's response to Ivy's motion to dismiss and/or for summary judgment, he argued for the first time that 11 "spoiled ballots" had not been counted. Rush never raised this allegation in his complaint or in his response to the interrogatories propounded by Ivy. Apparently, Rush is attempting to argue that the 11 rejected ballots should have been counted.

¶17.    In his response to Ivy's motion to dismiss and/or for summary judgment, Rush only states:

> There are 11 regular ballots which were cast in the ward 3 elections,(sic) but not counted by the Belzoni Election Commission (BEC) because the BEC held that [the] ballots were spoiled.

¶18.    The record reflects the 11 ballots rejected by the BEC contained improper marks on the ballots. The ballots were required to be marked with a check mark (T) or an (X) to be deemed a valid ballot. *See* Miss. Code Ann. § 23-15-551 (Rev. 2001). The rejected ballots all contained distinguishing marks that rendered them invalid. Ten of the ballots contained colored in squares as opposed to a check mark (T) or an (X) and one ballot contained extraneous markings in the space to write in a name on the ballot beside the check mark (T) for Ivy. Of the rejected ballots, 6 arguably indicate an intention to vote for Rush while 5 arguably indicate an intention to vote for Ivy. However, this amounts to pure speculation. The markings on the ballots could have just as easily been an attempt to mark out a check mark (T) or an (X) placed in error in order to not indicate a vote for the candidate.

¶19.    Rush contends that he should have received 77 votes with Ivy receiving 75 votes. However, these votes were rejected by the BEC making Rush's argument not plausible. The original tallied returns for the ward 3 election were 74 votes for Rush and 75 votes for Ivy. The BEC certified returns were 75 votes for Rush and 77 for Ivy. Assuming arguendo that these 11 rejected ballots were added back into the

return, the original tallied return would have then been 80 votes for Rush and 80 votes for Ivy, not the 77 votes for Rush and 75 votes for Ivy as argued by Rush in his response to Ivy's interrogatory number 2.

¶20. Clearly, the rejected ballots contained distinguishing marks which rendered them invalid. We find that these 11 ballots were properly rejected. Furthermore, Rush offers no explanation why the ballots should not have been rejected or that the BEC acted improperly. In fact, Rush never raised this argument in his complaint. Miss. Code Ann. § 23-15-951 requires that "the grounds upon which the election is contested" must be set forth. We find that Rush's allegation does not support reversal of the trial court's summary judgment on this point. This argument is without merit.

## II. Application of Miss. Code Ann. §§ 23-15-14 and 23-15-13

¶21. Rush contends that this case presents a legal issue of first impression as to the correct interpretation of Miss. Code Ann. §§ 23-15-13 and 23-15-14. Rush contends that 15 of the 23 affidavit ballot voters were improperly rejected as not being registered to vote.[5] Rush produced copies of the 15 affidavit ballot voters' registration where they were registered to vote in Humphreys County.[6] They are:

| Registered to vote in Humphreys County | Date registered in Humphreys County |
|---|---|
| Cleo (Pitts) Hayes | 09/30/80 |
| Annette Brown | 06/23/83 |
| Ethel (Lee) (Brown) Robinson | 12/30/76 |
| Johnny L. Taylor (Jr.) | 06/19/83 |
| Irving Blanton, (Jr.) | 09/06/83 |
| Mary Sims | 01/06/88 |
| Larry Griffin | 07/15/83 |
| Dorothy M. Hooker | 05/21/75 |

---

[5] As previously stated, 4 of the 27 affidavit ballot votes were opened and counted. Therefore, 23 affidavit ballot votes were rejected. However, Miss. Code Ann. § 23-15-14 is applicable to only 15 of the 23 rejected affidavit ballot voters who were registered in the county.

[6] The record reflects that of the 23 affidavit ballot votes that were rejected, 6 were not registered to vote in either Humphreys County or Belzoni, namely being Lorraine Sims, Robert D. Davis, Eva Mae Shatter, Serita Wheeler, Nittkea Shatter, and Marcus Hooker.

| | |
|---|---|
| Jimmy (Ray) Sims | 07/05/79 |
| Lula (Mae) Johnson | 06/05/86 |
| Benny L. Wolford | 05/29/87 |
| Jacquelene T. (Todd) Carrodine | 03/11/99 |
| Tequila K. Gowdy | 11/01/94 |
| Wilbert E. Smith | 05/04/77 |
| Edna Weathersby(registered to vote in federal elections only) | 05/31/00 |

Rush argues that these 15 affidavit ballot voters should have been deemed registered to vote in the Belzoni ward 3 election pursuant to Miss. Code Ann. § 23-15-14 since they were registered to vote in the county.

Miss. Code Ann. § 23-15-14 provides that effective from and after November 29, 1988:

(1)    All persons who reside in a municipality shall be registered as provided in this section as qualified electors of such municipality if on the effective date of this section they:

    (a)    Are properly registered qualified electors of the county in which they reside;

    (b)    Reside in a municipality in the county in which they are qualified electors;

    (c)    Are not registered to vote in such municipality; and

    (d)    Have resided in such municipality for at least thirty (30) days.

(2)    Within thirty (30) days after the effective date of this session, the registrar of every county shall deliver to the municipal clerk of each municipality situated, in whole or in part, within such county a copy of the most recent precinct or subprecinct pollbook for the county precinct or precincts in which such municipality is included or such equivalent computer data or information as will permit the identification of those municipal residents who are required to be registered pursuant to subsection (1) of this section.

(3)    The municipal clerk shall review the county precinct or subprecinct pollbooks or other information provided by the county registrar and compare such information with the municipal registration book. He shall attempt to identify those municipal residents who are required to be registered pursuant to subsection (1) of this section. The county registrar shall cooperate with the municipal clerk and provide assistance in this process. Any municipal residents so identified shall be added by the municipal clerk to the municipal registration book. The municipal clerk shall insert the name and address of such municipal resident upon an application form and shall endorse the application with the notation that the individual is registered as a municipal elector pursuant to this section. The review and identification process and the final addition of municipal electors pursuant thereto shall be

completed by the municipal clerk not later than ninety (90) days after the effective date of this section.

(4)     The names, addresses and municipal ward or precinct of those municipal electors added pursuant to this section shall be posted by the municipal clerk at the city hall for thirty (30) days and shall be published by the municipal clerk by notice in the newspaper of general circulation once a week for three (3) consecutive weeks subsequent to the final date for the addition of municipal electors pursuant to this section.

(5)     A municipal resident who is required to be added to the municipal registration books pursuant to this section and who, for any reason, is not added, may utilize the affidavit ballot procedure contained in Section 23-15-573, Mississippi Code of 1972, at any municipal election and his ballot shall be counted in such municipal election and he shall be deemed duly registered in the municipality.

¶22.    As acknowledged by both parties in their briefs, Miss. Code Ann. § 23-15-14 was enacted in 1988 as a part of the State's response to federal court litigation seeking to end  Mississippi's dual registration system which had previously required a municipal elector to register separately with both the county registrar and the municipal registrar.  *See* 1988 Miss. Laws Ch. 350; ***Miss. State Chapter Operation Push v. Allain***, 674 F. Supp.1245 (N.D. Miss. 1987), *aff'd*, 932 F.2d 400 (5th Cir. 1991). *See also **Miss. State Chapter Operation Push v. Mabus***, 717 F. Supp. 1189, 1190 (N.D. Miss. 1989).  Miss. Code Ann. § 23-15-14 was enacted to eliminate the vestiges of the dual registration system by ensuring that properly registered electors of a county who were residents of a municipality therein, but not on its voter rolls, were automatically registered on the municipal rolls.

¶23.    However, as Ivy contends neither the 1988 legislation or the *Push* case dealt with the application or operation of Miss. Code Ann. § 23-15-13.  Miss. Code Ann. § 23-15-13 requires a *change of residency* when a voter moves from one ward or voting precinct to another within the same municipality. Miss. Code Ann. § 23-15-13 provides:

10

An elector who *moves* from one ward or voting precinct to another ward within the same municipality or voting precinct within the same county shall not be disqualified to vote, but he or she shall be entitled to have his or her registration transferred to his or her new ward or voting precinct upon making written request therefor at any time up to thirty (30) days prior to the election at which he or she offers to vote, and if the removal occurs within thirty (30) days of such election he or she shall be entitled to vote in his or her new ward or voting precinct by affidavit ballot as provided in Section 23-15-573.

(emphasis added). Ivy further argues that:

[T]he plain and unambiguous language of § 23-15-13 requires any Humphreys County voter, or Belzoni resident from a different Ward, moving into Belzoni Ward 3 to make a written request to transfer his registration to said Ward 3 at least thirty (30) days prior to an election in order to vote in said election. [Miss. Code Ann.] § 23-15-13. None of the affidavit ballot voters in question did so and the [s]pecial [j]udge properly found that none of these affidavit ballots should be counted.

¶24. Laura Anne Byars (Byars), Belzoni City Clerk, provided an affidavit that provided:

As of thirty (30) days prior to the June 5, 2001, municipal elections in the City of Belzoni **none of the following names appeared on the voter registration rolls of the City of Belzoni: Cleo Hayes, Annette Brown, Ethel Lee Brown Robinson, Johnny Lee Taylor, Irving Blanton, Lorraine Sims, Mary L. Sims, Wilbert E. Smith, Larry Griffin, Elna Weathersby, Dorothy Hooker, Jimmy Sims, Eva Mae Shatter or Edna Mae Shatter, Lula M. Johnson, Benny Wolford, Serita Wheeler, Nittkea Shatter or Nittkea A. Shaffer, Marcus Hooker, Jackie Carrodine, Robert D. Davis, Tequila Gowdy or Teauilla Kenyatta Gowdy.**
As of thirty (30) days prior to the June 5, 2001, municipal elections in the City of Belzoni **none of the following named person had made written request to the City of Belzoni pursuant to Section 23-15-13** of the Mississippi Election Code to have their registration transferred to Alderman Ward 3 of City of Belzoni: **Cleo Hayes, Annette Brown, Ethel Lee Brown Robinson, Johnny Lee Taylor, Irving Blanton, Lorraine Sims, Mary L. Sims, Wilbert E. Smith, Larry Griffin, Elna Weathersby, Dorothy Hooker, Jimmy Sims, Eva Mae Shatter or Edna Mae Shaffer, Lula M. [Johnson, Benny Wolford, Serita Wheeler, Nittkea Shatter or Nittkea] A. Shaffer, Marcus Hooker, Jackie Carrodine, Robert D. Davis, Tequila Gowdy or Teauilla Kenyetta Gowdy.**

(emphasis added). Byars's affidavit was submitted as an exhibit to Ivy's motion to dismiss and/or for

summary judgment.

¶25. The trial court determined that Ivy was entitled to summary judgment since none of the affidavit ballot voters were properly registered pursuant to Miss. Code Ann. § 23-15-13 to have their votes counted in the June 5, 2001, election. In reaching its ruling, the trial court stated:

> The [s]econd [c]ause of [a]ction in the [c]omplaint alleges that the Belzoni Election Commission failed to count the affidavit ballots of certain voters who allegedly resided in [w]ard 3 for more than 30 days prior to the June 5, 2001, election but whose names did not appear on the voter registration rolls of the City of Belzoni.
> Petitioner/Counter-Respondent Rush claimed that pursuant to Section 23-15-14 of the Mississippi Election Code if any of these absentee voters were ever registered to vote in Humphrey[s] County and subsequently moved into [w]ard 3 of the City of Belzoni that they should also automatically be a registered voter of [w]ard 3 of the City of Belzoni.
> Section 23-15-14 does provide that if a person was a registered qualified elector of a county on that [s]ection's effective date (November 29, 1988), their names were required to be added to the voter registration books of the municipality in which they also resided.
> However, Mr. Rush's position does not take into account the clear requirements of Section 23-15-13 of the Mississippi Election Code that an ***elector who moves from one ward or voting precinct to another ward within the same municipality or voting precinct within the same county must make a written request to the appropriate registrar to transfer his or her registration to their new ward or voting precinct***.
> According to the undisputed affidavit of Belzoni City Clerk, none of these affidavit ballot voters had made written requests to transfer their registration to [a]lderman [w]ard 3 of the City of Belzoni by 30 days prior to the June 5, 2001, election nor were any of their names on the voter registration lists of the City of Belzoni for said election.
> Mrs. Ivy is entitled to summary judgment that none of these affidavit ballot voters ever made any written request to have their registration transferred to [w]ard 3 of the City of Belzoni and in the absence of such a request more than 30 days prior to the election, these affidavit ballot voters were not entitled to case an affidavit ballot or to have their votes counted in the [a]lderman [w]ard 3 June 5, 2001, election.

(emphasis added).

¶26. The record reflects that 15 affidavit ballot voters were registered to vote on the county and city voter rolls. The trial court properly determined Miss. Code Ann. § 23-15-14 must still operate in conjunction with Miss. Code Ann. § 23-15-13. However, the trial court did not have sufficient information as to the current addresses of all of these affidavit ballot votes in order to apply Miss. Code Ann. § 23-15-

12

13 to preclude these votes. We find that the trial court did not properly apply Miss. Code Ann. § 23-15-13. Reviewing these 15 affidavit ballot votes it appears that only Ethel (Lee) (Brown) Robinson actually indicated that she had moved within the municipality since she registered in the county. Her affidavit ballot reflects that she changed her residency in March before the election held in June.

¶27.    However, we are without reliable information on appeal to determine if Ethel (Lee) (Brown) Robinson moved within the same ward, being ward 3, or moved to a different ward as is seemingly required for application of Miss. Code Ann. § 23-15-13. A map of the city of Belzoni and a description of each of the wards is contained in the record. However, the map is incomprehensible and illegible. Without this information, we cannot make a determination if Miss. Code Ann. § 23-15-13 does in fact bar this affidavit ballot vote as determined by the trial court.

¶28.    If there had been sufficient information that Ethel (Lee) (Brown) Robinson had in fact just moved within the same ward without changing wards, arguably then Miss. Code Ann. § 23-15-13 would not have operated to bar this affidavit ballot. However, without more information, we conclude that it is not appropriate to resort to speculation to reverse the trial court's finding that Ethel (Lee) (Brown) Robinson's vote was precluded pursuant to Miss. Code Ann. § 23-15-13.

¶29.    Of the remaining 14 affidavit ballot voters that were registered on the county and city voter rolls, 9 affidavit ballots did not provide a current address on the affidavit ballot[7]:

| | |
|---|---|
| Jacquelene T. (Todd) Carrodine | Dorothy Hooker |
| Tequila K. Gowdy | Edna Weathersby (registered for federal elections only) |

_____

[7] The 4 affidavit ballot votes accepted by the BEC and the trial court did not contain current addresses either. However, this Court is without sufficient information to discuss why these affidavit ballot votes were accepted. Regardless, as each candidate got 2 of the 4 votes, the outcome of the election was unaffected.

Benny L. Wolford     Larry Griffin[8]
Lula Mae Johnson     Annette Brown
Jimmy (Ray) Simms

¶30. This Court does not have sufficient information to determine whether these individuals actually moved or just improperly filled out the affidavit ballot leaving that section blank. Without this information, we conclude that it would not be proper to find that these 9 affidavit ballot votes should have been opened. However, we find that the trial court erred by using to Miss. Code Ann. § 23-15-13 as its basis to preclude these affidavit ballot votes. Without the current address information, it is impossible for the trial court or this Court to apply Miss. Code Ann. § 23-15-13 to these votes. The trial court properly quoted Miss. Code Ann. § 23-15-13 but missed the intent of the statute. These 9 affidavit ballot votes were properly excluded since they were incomplete not because of Miss. Code Ann. § 23-15-13 as stated by the trial court. None of these contained both a former and current address on the affidavit ballot vote. Any other finding would result in blatant speculation that the current address section was left blank because the voter had not moved. A review of the record does not support such a conclusion. Regardless, there is no way to apply Miss. Code Ann. § 23-15-13 if they had not changed their addresses.

¶31. Of the affidavit ballot voters that were registered to vote on the county and city voter rolls, only 5 correctly completed the affidavit ballot by providing both a former address and a current address on the affidavit ballot. They are:

Wilbert E. Smith
Mary Sims
Irving Blanton, (Jr.)
Cleo (Pitts) Hayes
Johnny Lee Taylor (Jr.)

---

[8] The county voter roll and the city voter roll both list the same address, 212 Blackland, which is listed in Ward 3. However, Griffin did not list a current address on his affidavit ballot.

¶32.    However, these 5 affidavit ballot votes are not without problems when we examine the county and city voter rolls. A notation on the county roll shows Wilbert E. Smith as having a general delivery address in Louise, Mississippi. Mary Sims and Irving Blanton, Jr. are shown on the county and city rolls as residing in Ward 1 on the county and city voter rolls. Mary Sims and Irving Blanton, Jr. provided addresses on their affidavit ballots different from those listed on the county and city voter rolls. According to the affidavit ballot, Cleo (Pitts) Hayes moved to 216 Silver City Road in Ward 3 in 1999. However, Cleo (Pitts) Hayes did not change her address to reflect her move from Ward 1 to Ward 3 until June 20, 2001, 15 days after the election in question. Johnny Lee Taylor (Jr.) is reflected as residing in Ward 5 at 200 Hoover, Belzoni, Mississippi on the county and city voter rolls. However, Johnny Lee Taylor (Jr.)'s affidavit ballot indicates the current and former address as 420 Silver City Road. Therefore, for all the foregoing reasons, these 5 affidavit ballot votes that properly listed a current and a former address on the affidavit ballot should not be opened and counted. We find that Miss. Code Ann. § 23-15-13 operates to bar these 5 affidavit ballot votes.

### III. Sherron Sutton and Dwight A. Guthrie

¶33.    In a somewhat disjointed argument on appeal, Rush also argues that only 21, not 23, unopened and uncounted affidavit ballot votes are actually in dispute. The two affidavit ballot voters addressed are:

> Dwight A. (Anthony) Guthrie
> Sherron Sutton

Ivy conceded in both her answer to Rush's complaint and in her motion to dismiss and/or for summary judgment that the two affidavit votes cast by Dwight A. Guthrie and Sherron Sutton were legal votes and must be counted.[9] The record does not reflect that the trial court factored in these affidavit ballot votes cast

---

[9] The Belzoni Election Commission determined that Sherron Sutton submitted a false application. However, the record contains no information to support that the application was false.

by Dwight A. Guthrie and Sherron Sutton into its final judgment. The record also does not reflect that Rush ever requested the trial court to clarify its position on these two affidavit ballots cast by Dwight A. Guthrie and Sherron Sutton.

¶34. In contrast, Ivy in her brief states that Rush in his brief "erroneously continues to refer [to the] 21 unopened and uncounted affidavit ballots." Furthermore, in his complaint, Rush stated the reason that Sherron Sutton was rejected was because she filed a false application. As to Dwight A. Guthrie, the city voter roll lists him as a registered voter residing at 305 Pecan Street, Belzoni, Mississippi, however, the ward that he resides in is cut off of the voter roll printout contained in the record. Therefore, we cannot be sure that Dwight A. Guthrie was registered to vote in Ward 3.[10]

¶35. Based on the lack of information contained in the city voter roll, the discrepancies by the parties and the fact that the trial court did not address Sherron Sutton and Dwight A. Guthrie in its final judgment, we do not find sufficient basis to open and count these two affidavit ballot votes. Furthermore, neither Sherron Sutton nor Dwight A. Guthrie listed a current address on their affidavit ballot votes. Again, we are left with blatant speculation as to why that information was incomplete. Therefore, we find that affidavit ballot votes cast by Sherron Sutton and Dwight A. Guthrie should remain unopened and uncounted.

## CONCLUSION

---

[10] The excerpt of the 15 county voter roll registration cards supplied as an exhibit does not contain the voter registration for Dwight A. Guthrie to compare to the city voter roll to determine which ward was correct. A review of the city voter roll provides that every other address listed as Pecan Street is listed as being within Ward 4. Addresses from the 200's to the 400's on Pecan Street are still within Ward 4. In Rush's complaint, he lists that Dwight A. Guthrie was rejected as being a "non-resident."

16

¶36. For all the foregoing reasons, we affirm the trial court's judgment dismissing Rush's complaint and action with prejudice and finding that the results of the City of Belzoni Alderman Ward 3 general election held on June 5, 2001, were 77 votes for Ivy and 75 votes for Rush.

¶37. **AFFIRMED.**

**PITTMAN, C.J., McRAE AND SMITH, P.JJ., WALLER, COBB AND CARLSON, JJ., CONCUR. DIAZ AND GRAVES, JJ., NOT PARTICIPATING.**