IN THE SUPREME COURT OF MISSISSIPPI
NO. 1998-CA-01219-SCT

*TONY JENKINS, INDIVIDUALLY, AND WIFE, ANITA JENKINS, INDIVIDUALLY, AND AS NEXT FRIEND OF SHAUN JENKINS AND RON JENKINS, MINORS*

*v.*

*THE OHIO CASUALTY INSURANCE COMPANY*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/22/1998 |
| TRIAL JUDGE: | HON. V. R. COTTEN |
| COURT FROM WHICH APPEALED: | NESHOBA COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | RICHARD BENZ, JR. |
| ATTORNEYS FOR APPELLEE: | STUART ROBINSON, JR. |
| | CHADWICK WARREN RUSSELL |
| | C. STEPHEN STACK, JR. |
| NATURE OF THE CASE: | CIVIL - INSURANCE |
| DISPOSITION: | AFFIRMED - 09/13/2001 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 10/4/2001 |

**EN BANC**

**EASLEY, JUSTICE, FOR THE COURT:**

¶1. On June 22, 1996, Tony, Anita, Shaun and Ron Jenkins ("the Jenkinses") were involved in a car accident with Douglas Holton ("Holton"). On August 1, 1996, the Jenkinses sued Holton in the Circuit Court of Neshoba County alleging that Holton directly and proximately caused the car crash under a theory of negligence. Holton was insured by the Mississippi Farm Bureau Mutual Insurance Company ("Farm Bureau"). On October 12, 1996, Holton filed his Answer and Affirmative Defenses. The Farm Bureau provided Holton with a legal defense in the circuit court action pursuant to his policy. On or about November 14, 1996, Farm Bureau filed a Complaint for Declaratory Relief in the Chancery Court of Rankin County.

¶2. On March 25, 1997, the Jenkinses filed an Amended Complaint to include Ohio Casualty Insurance Company ("Ohio Casualty"), carrier of an uninsured motorist policy held by Tony Jenkins. On September 22, 1997, the Chancery Court of Rankin County granted summary judgment in favor of Farm Bureau. On October 13, 1997, Ohio Casualty paid the Jenkinses under the uninsured motorist insurance policy.

¶3. On May 29, 1998, Ohio Casualty filed a Motion for Summary Judgment in the Circuit Court of Neshoba County. The motion alleged that Ohio Casualty had no liability for punitive damages on the ground that there was a legitimate and arguable reason for denying the Jenkinses' claim. In addition, Ohio Casualty claimed that it committed no wilful or malicious wrong and did not act with gross or reckless disregard for the Jenkinses rights.

¶4. On June 13, 1998, the Jenkinses filed a Plaintiff's Response to Motion for Summary Judgment. The

Circuit Court of Neshoba County granted Ohio Casualty's summary judgment motion on June 26, 1998, and dismissed the Jenkinses' action with prejudice. On July 3, 1998, the Jenkinses filed a notice of appeal to this Court.

## FACTS

¶5. On June 22, 1996, a vehicle driven by Douglas Holton struck the vehicle occupied by Tony, Anita, Shaun and Ron Jenkins on Highway 19 in Neshoba County, Mississippi. In a deposition, Mrs. Jenkins testified that at approximately 10:00 p.m. on June 22, 1996, the Jenkinses were traveling on Highway 19 returning home after shopping. A car attempted to swerve and force the Jenkinses off the road. At one point the car was behind the Jenkinses vehicle and began ramming the rear of the car. The Jenkinses' car flipped into a ditch. Mr. Jenkins got out of the car, and the driver was pointing a gun at him and told Mrs. Jenkins to get into his car. The driver and Mrs. Jenkins left in his car and drove down the road one or two miles. Then the driver decided to let Mrs. Jenkins go and drove her toward her car.

¶6. The August 1, 1996, complaint alleged that Holton's reckless and careless driving directly and proximately caused the collision which was directly and proximately caused by Holton's negligent acts. Specifically, the complaint alleged that Holton negligently and unlawfully failed to keep his vehicle under control, failed to keep a proper lookout and other acts negligently and carelessly caused his vehicle to collide into the rear of the Jenkinses' vehicle. Holton had an insurance policy with Farm Bureau. Tony Jenkins had an uninsured motorist policy with Ohio Casualty.

¶7. The Ohio Casualty investigation report, dated July 10, 1996, indicated that Ohio Casualty may be requested to make an uninsured motorist claim, if Farm Bureau denied coverage. Ohio Casualty had paid a $135.00 towing and storage fee and medical fees up to a $1,000.00 individual limit.

¶8. On October 12, 1996, Holton filed his Answer and Affirmative Defenses through his attorney. The Farm Bureau provided Holton with a legal defense in the circuit court action pursuant to his policy. In correspondence dated October 23, 1996, Ohio Casualty indicated that there would be no uninsured motorist coverage available under the Jenkinses' policy since Holton had valid and collectible insurance at the time of the accident.

¶9. On or about November 14, 1996, Farm Bureau filed a Complaint for Declaratory Relief in the Chancery Court of Rankin County (the county where Holton resided) to determine what coverage, if any, Farm Bureau provided to Holton. Farm Bureau alleged that the insurance policy expressly excluded coverage from liability for injuries and damages resulting from intentional acts of the insured. On November 18, 1996, the Jenkinses' attorney advised Ohio Casualty that Farm Bureau filed a declaratory judgement against Holton. On November 22, 1996, Ohio Casualty informed the Jenkinses' attorney that should the courts determine that Farm Bureau did not have coverage then Ohio Casualty would be willing to open an uninsured motorist claim for the Jenkinses.

¶10. On December 2, 1996, the Jenkinses' attorney forwarded a copy of the Farm Bureau's pleadings and informed the company of the Jenkinses' financial hardship. On January 10, 1997, Ohio Casualty informed the Jenkinses' attorney that it denying the uninsured motorist coverage at that time. Ohio Casualty based its denial on the fact that Farm Bureau was defending Holton and counsel for Farm Bureau advised that Holton's coverage was not denied, but that Farm Bureau filed a declaratory judgment to determine its obligations under the policy with Holton.

¶11. On March 25, 1997, the Jenkinses filed an Amended Complaint to include Ohio Casualty carrier of an uninsured motorist policy. The insurance policy provided for uninsured motorist benefits in the form of compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" because of "bodily injury" (1) sustained by an "insured"; and (2) caused by an accident. The pertinent portion of the policy states that an "uninsured motor vehicle" means a land motor vehicle or trailer of any type...(4) to which a bodily injury liability bond or policy applies at the time of the accident but the bonding or insuring company: (a) denies coverage...." The Jenkinses alleged that Ohio Casualty denied uninsured motorist benefits based upon the contention that Farm Bureau had not yet denied coverage to Holton. The Jenkinses alleged bad faith on the part of Ohio Casualty and sought to recover damages. In addition, the Jenkinses demanded on a contractual basis uninsured motorist coverage with policy limits of $40,000.00 plus interest, attorney's fees, and punitive damages plus expenses for wrongful denial of uninsured motorist benefits. On May 15, 1997, Ohio Casualty filed an Answer and Counterclaim.

¶12. On August 13, 1997, Farm Bureau filed a Motion for Summary Judgment in the Chancery Court of Rankin County. On September 22, 1997, the Chancery Court of Rankin County granted summary judgment in favor of Farm Bureau. The judgment stated that Farm Bureau had "no duty to pay any sum whatsoever to any person or entity under the terms of the provisions of the subject policy of insurance in connection with or arising out of either the claims asserted by the Jenkinses against Douglas Holton or the events giving rise to such claims." In addition, Farm Bureau had no duty to provide a legal defense to Holton. Affidavits from Farm Bureau representatives stated that Holton was notified that he would no longer be provided coverage for the claim and any legal defense previously provided under a reservation of rights was revoked. On October 13, 1997, Ohio Casualty paid the Jenkinses under the uninsured motorist insurance policy.

¶13. On May 29, 1998, Ohio Casualty filed a motion for summary judgment in the Circuit Court of Neshoba County. The motion alleged that Ohio Casualty had no liability for punitive damages on the ground that there was a legitimate and arguable reason for denying the Jenkinses' claim. In addition, Ohio Casualty claimed that it committed no wilful or malicious wrong and did not act with gross or reckless disregard for the Jenkinses' rights.

¶14. On June 13, 1998, the Jenkinses filed a plaintiff's response to motion for summary judgment. The Circuit Court of Neshoba County granted Ohio Casualty's summary judgment motion on June 26, 1998, and dismissed the Jenkinses' action with prejudice. On July 3, 1998, the Jenkinses filed a Notice of Appeal to this Court.

## DISCUSSION

### 1. Whether the Trial Court Erred By Granting Summary Judgment for the Appellee, Ohio Casualty Insurance Company?

¶15. The Jenkinses contend that the trial court erred in granting summary judgment in favor of Ohio Casualty because there were genuine issues of material fact. The focus of the whole argument as proposed by the Jenkinses in the brief before this Court deals with the issue of bad faith and punitive damages. As the record reflects, Ohio Casualty paid the Jenkinses' uninsured motorist claim within a month of the Chancery Court of Rankin County granting summary judgment to Farm Bureau. Therefore, this Court will address whether summary judgment was proper for the punitive damage claim only.

## *Standard of Review*

¶16. This Court applies a de novo standard of review on appeal from a grant of summary judgment by the trial court. *Russell v. Orr*, 700 So.2d 619, 622 (Miss. 1997); *Richmond v. Benchmark Constr. Corp.*, 692 So.2d 60, 61 (Miss. 1997); *Northern Elec. Co. v. Phillips*, 660 So.2d 1278, 1281 (Miss. 1995); Rule 56(c) of the Mississippi Rules of Civil Procedure provides that summary judgment shall be granted by a court if "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that *there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law*. M.R.C.P. 56 (c) (emphasis added). The moving party has the burden of demonstrating that there is no genuine issue of material fact in existence, while the non-moving party should be given the benefit of every reasonable doubt. *Tucker v. Hinds County*, 558 So.2d 869, 872 (Miss. 1990). "Issues of fact sufficient to require denial of a motion for summary judgment obviously are present where one party swears to one version of the matter in issue and another says the opposite." *Id*.

> Of importance here is the language of the rule authorizing summary judgment 'where there is no genuine issue of *material* fact.' ***The presence of fact issues in the record does not per se entitle a party to avoid summary judgment. The court must be convinced that the factual issue is a material one, one that matters in an outcome determinative sense...the existence of a hundred contested issues of fact will not thwart summary judgment where there is no genuine dispute regarding the material issues of fact.***

*Simmons v. Thompson Mach. of Miss., Inc.*, 631 So.2d 798, 801 (Miss.1994) (emphasis added)(citing *Shaw v. Burchfiel*d, 481 So.2d 247, 252 (Miss. 1985)). The evidence must be viewed in the light most favorable to the non-moving party. *See Northern Electric Co.*, 660 So.2d at 1281; *Russell*, 700 So.2d at 622; *Richmond*, 692 So.2d at 61; *Simmons,* 631 So.2d at 802; *Tucker*, 558 So.2d at 872.

¶17. To avoid summary judgment, the non-moving party must establish a genuine issue of material fact within the means allowable under the Rule. *Richmond*, 692 So.2d at 61 (citing *Lyle v. Mladinich,* 584 So.2d 397, 398 (Miss. 1991)). "If any triable issues of fact exist, the lower court's decision to grant summary judgment will be reversed. Otherwise the decision is affirmed." *Richmond*, 692 So.2d at 61.

## Punitive Damages/Bad Faith Claim

¶18. Punitive damages should be assessed with caution and within narrow limits as an example and warning. *Standard Life Ins. Co. v. Veal*, 354 So.2d 239, 247 (Miss. 1977). The plaintiff has a "heavy burden" when seeking punitive damages based on a bad faith insurance claim. *Life & Cas. Ins. Co. v. Bristow*, 529 So.2d 620, 623 (Miss. 1988)(citing *Blue Cross & Blue Shield of Miss., Inc. v. Campbell*, 466 So.2d 833, 842 (Miss. 1984)). This Court addressed the issue of punitive damages for a denial of an insurance claim in *State Farm Mut. Auto. Ins. Co. v. Grimes,* 722 So.2d 637 (Miss. 1998). In *Grimes*, this Court set out the two-step analysis for assessing punitive damages for a bad faith insurance claim as follows:

> The issue of punitive damages should not be submitted to the jury unless the trial court determines that there are jury issues with regard to whether:

> 1. The insurer lacked an arguable or legitimate basis for denying the claim, *and*

> 2. The insurer committed a wilful or malicious wrong, or acted with gross and reckless disregard for

the insured's rights.

*Grimes,* 722 So.2d at 641 (citing *Bristow*, 529 So.2d at 622). This Court held that these questions are both questions of law to be decided by the trial judge. *Bristow*, 529 So.2d at 623. If an insurance company fails to pay a claim based upon an arguable or legitimate reason, however, punitive damages will not lie. *Veal*, 354 So.2d at 248.

¶19. The Jenkinses claimed that Ohio Casualty acted in "bad faith" and the punitive damage claim should have been submitted to a jury based upon the following allegations: (1) Farm Bureau was clearly denying coverage; (2) Ohio Casualty knew the Jenkinses were under financial hardship; (3) Ohio Casualty paid some benefits within a month of the accident; (4) under the lying exception a factual dispute was created which made summary judgment improper; (5) Ohio Casualty had a duty to continue an investigation and evaluate its position and waiting for the resolution of the declaratory action constituted bad faith; and (6) Ohio Casualty turned down an offer to pay the Jenkinses with protection of subrogation rights.

¶20. In brief, Ohio Casualty countered the Jenkinses' claims by claiming that it did not act in bad faith. Ohio Casualty had an arguable and legitimate reason for initially denying the uninsured motorist claim. In addition, there was no evidence of a wilful or malicious wrong or that Ohio Casualty acted with gross and reckless disregard for the Jenkinses' rights. The trial court made a determination as to the facts in the case and found that no punitive damage claim was warranted.

¶21. Ohio Casualty claims that the filing of the declaratory judgment action by Farm Bureau did not constitute a denial of coverage. Holton was defended during the pendency of the declaratory action. While Ohio Casualty was sympathetic to the financial hardship of the Jenkinses, there was no obligation or provision under the uninsured motorist policy to pay for hardship reasons. The payment of towing and storage fees by Ohio Casualty was a matter of good will and good faith by Ohio Casualty and done at the prompting of the Jenkinses' counsel. The lying exception is applied when the insured's defense is based on grounds of deliberate falsehood and fabrication, neither of which were alleged by the Jenkinses. *Andrew Jackson Life Ins. Co. v. Williams*, 566 So.2d 1172, 1183 (Miss. 1990). Ohio Casualty claimed that a reasonable investigation was performed. Farm Bureau advised the Ohio Casualty insurance agent that Holton was not denied coverage; however, a declaratory action was filed to determine obligations afforded Holton. As to subrogation rights, Ohio Casualty claimed that Farm Bureau was providing coverage to Holton. Any payment to the Jenkinses would have been voluntary without obligation and without recourse.

¶22. While opposing counsel discussed the various contentions in great detail in their briefs, this Court need not address each assertion individually as many of the contentions fail to address or support the relevant issue. The focus, rather, should be directed toward the few material facts.

¶23. Tony Jenkins's uninsured motorist policy stated in pertinent part that an "uninsured motor vehicle" means a land motor vehicle or trailer of any type...(4) to which a bodily injury liability bond or policy applies at the time of the accident but the bonding or insuring company: (a) denies coverage....

¶24. The June 22, 1998, summary judgment Order of the Circuit Court of Neshoba County stated:

> ...the Court, having thoroughly and maturely considered said [Summary Judgment] Motion and being fully advised in the premises, is of the opinion and finds that said Motion is well taken and should be granted.

¶25. The question of whether the Jenkinses were entitled to uninsured motorist benefits under the Ohio Casualty policy hinged upon the denial of coverage by Farm Bureau, Holton's insurance company. Neither the Jenkinses nor Ohio Casualty disputed that *denial of coverage* by Farm Bureau was the key issue to prompt payment of benefits to the Jenkinses under the Ohio Casualty uninsured motorist policy. There was no dispute of material facts in this case, only a differing interpretation.

¶26. Ohio Casualty had no duty to pay the Jenkinses under the uninsured motorist policy until such time as Holton was determined to be uninsured. The Chancery Court of Rankin County adjudicated that Farm Bureau had no obligation to Holton in September 1997. Once Holton was declared uninsured, Ohio Casualty had a duty to pay the Jenkinses. When Holton was declared uninsured, Ohio Casualty promptly paid the Jenkinses. Payment was made within a month of the determination by the Chancery Court of Rankin County.

¶27. Following the two-step analysis in *Grimes*, the issue of punitive damages could not be submitted to a jury because the trial court impliedly found that Ohio Casualty had an arguable or legitimate basis for denying the claim, *and* Ohio Casualty did not commit a wilful or malicious wrong, or act with gross and reckless disregard for the insured's rights. Ohio Casualty paid the Jenkinses' uninsured motorist policy claim within a month of the Rankin County Chancery Court adjudication and Farm Bureau's denial of insurance coverage.

## CONCLUSION

¶28. Viewing this case de novo and in the light most favorable to the non-moving party, the summary judgment motion was properly granted by the trial court. There was no genuine issue of material fact in dispute. In addition, under the two-step analysis of *Grimes*, Ohio Casualty had an arguable and legitimate reason to deny the Jenkinses' claim because Farm Bureau was covering Holton. Once Farm Bureau no longer had an obligation to cover Holton, Ohio Casualty promptly paid the Jenkinses in a matter of a few weeks.

¶29. For the foregoing reasons, the judgment of the Circuit Court of Neshoba County is affirmed.

¶30. **AFFIRMED.**

**PITTMAN, C.J., BANKS, P.J., SMITH, MILLS, WALLER AND COBB, JJ. CONCUR. McRAE, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY DIAZ, J.**

**McRAE, PRESIDING JUSTICE, DISSENTING**:

¶31. For sixteen months the Ohio Casualty Insurance Company ("Ohio") refused to pay an uninsured motorist claim for which it was clearly liable. No facts alleged by either party would have absolved Ohio of its duty to pay the claim. Ohio knew immediately (within 30 days) after the accident that it would have to pay an uninsured motorist claim according to its internal documents which summarize its investigation of the accident. Further, it knew that the acts of Horton were intentional and not covered under any liability policy. Insurance coverage will not cover a felony criminal act. Therefore, because the majority is misguided in saying that Ohio had an "arguable reason" to delay payment of the claim for a year and four months after the accident.

¶32. This is a first party claim. Ohio should pay the claim, taken its subrogation rights and go after the defendant or whomever is responsible. But, instead, it had the privilege of investing the insured's money and making the insured, who was in a financial hardship, hire an attorney at additional expense and lose money. Further, Ohio paid $135.00 towing fee plus $1,000.00 for medical fees. Without question, it knew it had an uninsured motorist claim, and punitive damages should be submitted to a jury for consideration of bad faith acts for the long, wrongful delay. An uninsured motorist claim is a first-party claim. *See State Farm Mut. Auto. Ins. Co. v. Nester*, 459 So. 2d 787 (Miss. 1984), *abrogated on other grounds*, **Burns v. Burns**, 518 So.2d 1205, 1207 & 1211 (Miss. 1988). It is no different than medical or life insurance. Ohio should have paid the claim and subrogated. Instead, Ohio got to use the money for a year and four months and invest it, knowing full well the hardship it was causing the insured. This is a jury question, and it should be sent back for a jury to resolve. Still, Ohio refused to pay the benefits to a family of four undergoing extreme financial hardship. The Jenkinses purchased this insurance to protect against the exact kind of injuries from which they suffered, but for sixteen months were denied the coverage for which they had bargained. As a result, they incurred additional stress and hardship, as well as the expense of protracted and wasteful litigation which resulted in the filing of more than 600 pages of court documents, and were not even paid interest on the money that Ohio was able to utilize for more than a year. Whether Ohio's actions rise to the level of willful or malicious conduct, or were committed with gross or reckless disregard for the rights of the Jenkinses, is a question for a jury to determine. The grant of summary judgment was therefore improper based on these facts. Accordingly, I dissent.

¶33. Ohio and the majority tout the fact that the chancery court ruled that Farm Bureau had no obligation to Holton on September, 1997, after which Ohio paid the claim. Ohio attempts to hide behind that technical language of the policy, which states that an uninsured motorist is one who has a policy, but the insurer "denies coverage." Farm Bureau, Holton's insurer, elected to wait until the chancery court's declaratory judgment of September, 1997, before officially declining coverage and terminating its defense of Holton. Ohio used this procedural wrangling to deny benefits to the Jenkinses, a claim for which it was abundantly clear that Ohio was liable.

¶34. It is obvious that Farm Bureau never had any intention of paying this claim, which arose from the intentional actions of Holton. In its motion to intervene, dated December 26, 1996, Farm Bureau outlined its position in this case as follows:

> Farm Bureau seeks to show that the aforementioned collision and/or collisions between the vehicle being operated by Douglas Holton and the vehicle being operated by Anita Jenkins, and any injuries and damages resulting therefrom on the part of Anita Jenkins, Tony Jenkins, Shaun Christopher Jenkins, and/or Ron Patrick Jenkins were cause by intentional acts on the part of Douglas Holton. The aforementioned policy of casualty insurance expressly excludes from coverage liability for all injuries and damages resulting from intentional acts of the insured. Farm Bureau seeks to establish that it has no obligation under the aforementioned policy to provide a defense to Douglas Holton in connection with the civil claims asserted against him by the Jenkins, **nor does Farm Bureau have any prospective obligation to indemnify Douglas Holton for any liability incurred by him in connection with the aforesaid incident.**

(emphasis added).

¶35. Furthermore, Holton did not contradict the Jenkinses' account of the events. His only defense was that

he claimed not to remember anything that happened. In a statement, tape-recorded by Farm Bureau representative Stuart Lee on July 20, 1996, he stated that he left a hunting camp in Attala County on the night in question after consuming "a few" beers and "in the neighborhood of three or four" sixteen-ounce tumblers of bourbon and Sprite. He did not remember leaving, but was told afterward that he left to go the Silver Star Casino in Philadelphia. On the way, Holton was allegedly involved in a drive-by shooting in Rankin County before encountering Mr. and Mrs. Jenkins and their two children. Holton repeatedly rammed their vehicle with his own, and eventually succeeded in running it off the road where it flipped over. At the time of giving this statement, Holton was facing charges relating to the drive-by shooting, two counts of assault, kidnaping, and leaving the scene of an accident.

¶36. Ohio therefore had no arguable basis for denying this claim. It knew it would have to pay the Jenkinses, but dragged it out for sixteen months. Ohio had the use of this money throughout this time, but did not pay any interest to the Jenkins, and the Jenkins did not receive the coverage for which they had bargained. "Mississippi recognizes that an insured bargains for more than mere eventual monetary proceeds of a policy; insureds bargain for such intangibles as risk aversion, peace of mind, and certain and prompt payment of the policy proceeds upon submission of a valid claim." *Andrew Jackson Life Ins. Co. v. Williams*, 566 So.2d 1172, 1184 (Miss. 1990). The Jenkinses received none of these benefits from Ohio, and after litigating the issue were not fully compensated for their claim.

¶37. Even if Ohio's denial of the Jenkinses' claim could be characterized as "arguable," this alone will not preclude submission of the issue of punitive damages to the jury. In *American Income Life Ins. Co. v. Hollins*, 2001 WL 695516, at * 7 (Miss. Jun. 21, 2001),we said that "Mississippi law has evolved to a point of recognition that submission of the punitive damages issue *may* be submitted notwithstanding the *presence* of an arguable basis." *Williams*, 566 So.2d at 1186 (emphasis in original). The majority misapplies *State Farm Mut. Ins. Co. v. Grimes*, 722 So.2d 637 (Miss. 1998), when it states that the issue of punitive damages may only be submitted to the jury where the judge first finds that the insurer lacked an arguable basis for denying the claim.

¶38. We should not allow insurers to hide behind linguistic gymnastics to defer paying claims for which they are clearly liable. In this case, The Ohio Casualty Insurance Company refused to honor the Jenkinses' uninsured motorist claim when even the party at fault could not offer any evidence that would have absolved Ohio of its duty to pay this claim. As a result, the insurer had the benefit of using the money for sixteen months without paying interest, while the insured's family was forced to endure extreme financial hardship, had to hire a lawyer, and in the end was not fully compensated for their claim. Accordingly, I dissent.

**DIAZ, J., JOINS THIS OPINION.**