# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2007-CA-00193-SCT

*UNITED STATES FIDELITY AND GUARANTY*
*COMPANY OF MISSISSIPPI*

*v.*

*DEBBIE MARTIN d/b/a CARTMELL GALLERY*
*AND CARTMELL GALLERY, LTD., LLC*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/20/2006 |
| TRIAL JUDGE: | HON. ROBERT WALTER BAILEY |
| COURT FROM WHICH APPEALED: | LAUDERDALE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | J. WADE SWEAT |
| | MARISA CAMPBELL ATKINSON |
| ATTORNEY FOR APPELLEE: | CHARLES W. WRIGHT, JR. |
| NATURE OF THE CASE: | CIVIL - INSURANCE |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND RENDERED IN PART |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE DIAZ, P.J., CARLSON AND GRAVES, JJ.**

**GRAVES, JUSTICE, FOR THE COURT:**

¶1.     United States Fidelity and Guaranty Company of Mississippi ("USF&G") appeals from a jury verdict in Debbie Martin's favor. USF&G raises four claims on appeal: 1) that the trial court should have granted summary judgment as to ambiguity of its insurance policy; 2) that the trial court should have granted judgment notwithstanding the verdict for Martin's failure to present sufficient evidence of sewer or drain backup; 3) that the trial court should have granted judgment notwithstanding the verdict for Martin's failure to present sufficient

evidence of fine arts coverage; and 4) that the trial court should not have excluded evidence of Martin's flood insurance claim and carpet cleanup from 2004. Martin cross-appeals, arguing that 1) the trial court should not have granted a remittitur; and 2) the trial court should not have granted summary judgment as to her punitive damages claim. We find some issues with merit and some without.

## FACTS

¶2. On April 7, 2003, a heavy rain or flood[1] in Meridian, Mississippi damaged the Cartmell Gallery (the "Gallery"), an art gallery owned by Debbie Martin. When she and her business partner Greg Cartmell were first notified of the damage early in the morning on April 7, 2003, both Martin and Cartmell went to inspect the Gallery. They found several inches of standing water in the Gallery and discovered that there was significant damage from the water. Martin and Cartmell promptly contacted Mike Gardner of Gardner's Carpet Cleaning and hired him to extract the water from the Gallery and clean the carpets. Gardner's Carpet Cleaning began cleaning on April 7, 2003. Martin and Cartmell testified that on April 7, 2003, and for several days afterward, the Gallery smelled of sewage. Gardner testified that starting April 8, 2003, the Gallery smelled of sewage.

¶3. Prior to the incident, on February 6, 2001, Martin bought an insurance policy (the "Policy") for the Gallery from USF&G. Martin renewed this policy on February 6, 2003 and the renewed policy was in effect at the time of the damage. On April 7, 2003, Martin filed a claim with USF&G for the damage to the Gallery. Shortly after April 7, 2003, Martin

---

[1] The characterization of the weather on April 7, 2003 is disputed by the parties.

2

drafted a list of damaged items. On April 23, 2003, Robert Hewitt, a claim specialist for USF&G, sent Martin a letter denying her claim. Martin obtained an expert's opinion that the Policy provided coverage for her claim and submitted a demand letter to USF&G with the expert opinion letter attached. USF&G denied the claim again on March 2, 2004.

¶4.     On April 7, 2004, Martin, d/b/a Cartmell Gallery, filed a complaint against USF&G. On September 14, 2005, USF&G filed a motion for summary judgment. USF&G argued that 1) the water exclusion in the Policy clearly and unambiguously precluded coverage for Martin's claim because the damage was caused in whole or in part by flooding; and 2) Martin should not be permitted to submit a punitive damages claim to the jury. On March 23, 2006, the trial court denied summary judgment on the first ground and granted summary judgment on the second. This case was tried before a jury from September 27, 2006 through September 29, 2006. After Martin presented her case, both parties moved for directed verdicts, which the trial court denied.

¶5.     On September 29, 2006, the jury returned unanimous verdicts on all three counts submitted for their decision. As to Count I, the jury found for Martin and awarded her $39,329 for damage caused by sewer or drain backup. On Count II, the jury found for Martin and awarded her $2,215 for damage under the fine arts provision of the Policy. As to Count III, the jury found for Martin and awarded her $3,084 for damage under the electronic data processing system provision of the Policy. The total damage award was $44,628.

¶6.     After the trial court entered a judgment according to the jury verdict, USF&G moved to remit the jury award under Count I, for sewer or drain backup, to $25,000. USF&G also filed a Motion for Judgment Notwithstanding the Verdict and Opposition to Award of Costs

3

("JNOV"), arguing, inter alia, that 1) the jury should not have been permitted to decide whether or not the damage to the Gallery was caused by sewer or drain backup and that the trial court incorrectly denied summary judgment on ambiguity grounds; 2) the trial court erroneously prevented USF&G from introducing evidence regarding Martin's successful flood insurance claim and cleanup of the Gallery after an incident in 2004; and 3) the jury verdict was contrary to the overwhelming weight of the evidence and should be overturned.

¶7.     After a hearing, the trial court granted the remittitur and denied the JNOV. The trial court decreased the jury award under Count I to $25,000 (for a total damage award of $30,299). On January 19, 2007, USF&G appealed and on January 27, 2007, Martin cross-appealed.

## ANALYSIS

¶8.     USF&G raises four issues on appeal and Martin raises two issues on cross-appeal.

**I.      Whether Summary Judgment Was Properly Denied as to Ambiguity of the Policy.**

¶9.     USF&G claims that the trial court should have granted its motion for summary judgment because the Policy clearly and unambiguously excludes coverage for Martin's claim. Section I of the Policy states, in relevant part:

> A.     Coverage Provided.
> We will pay for direct physical loss to Covered Property at the premises described in the Schedule of Premises caused by or resulting from any Covered Cause of Loss.
> > 1.     Covered Property.
> > [Omitted.]
> > 2.     Property Not Covered.
> > [Omitted.]
> > 3.     Coverage Extensions.
> > [Omitted].

4

4.  Additional Coverage.

. . .

v. Sewer or Drain Backup.
We will pay for direct physical loss to Covered Property at the premises described in the Schedule of Premises if the loss is caused by water that:
    (1) Backs up through sewers or drains, or
    (2) Enters into and overflows from within:
        (a) A sump pump,
        (b) A sump pump well, or
        (c) Any other system,
        designed to remove subsurface water from the foundation area.
The most we will pay for this Additional Coverage is $25,000 or the Limit of Insurance shown in the Property Coverage Part Declarations for Sewer or Drain Backup, whichever is greater.

B.  Covered Causes Of Loss.
[Omitted.]
C.  Exclusions.
    1.  We will not pay for loss to Covered Property caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. Unless otherwise stated, the following exclusions apply to all SECTION I - Coverages.
    a. Water.
        (1) Flood, surface water, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not.
        . . .[2]

---

[2] It should be noted that subsection I.C.1.a.(4) was added as a change to the Policy starting February 6, 2003. Subsection I.C.1.a.(4) contained the following language:
    (4) Water that backs up or overflows from a sewer, drain or sump, except as provided in SECTION I.A.4.v. Sewer or Drain Backup.
This language was in effect at the time of the damage to Martin's gallery.

When insureds renew a policy with USF&G, they are notified of modifications to their original policy in separate documents akin to riders. USF&G does not reproduce the original policy with modifications embedded. Possibly because of this practice, subsection I.C.1.a.(4) was apparently overlooked by both parties' attorneys when they

5

¶10.    USF&G claims that the trial court wrongly denied its motion for summary judgment as to ambiguity of the Policy. USF&G argued in part that "[t]he insurance policy clearly and unambiguously excludes coverage for the Plaintiffs' water damage claim." USF&G claimed that the water exclusion in the Policy is "almost identical" to a water exclusion found by the Southern District of Mississippi to be clear and unambiguous. *Eaker v. State Farm Fire & Cas. Ins. Co.*, 216 F. Supp. 2d 606, 622 (S.D. Miss. 2001). Martin argued that the policy was ambiguous and should, therefore, be construed in her favor.

¶11.    After a hearing, the trial court denied summary judgment on the grounds of ambiguity. The trial court first reviewed the relevant case law and set out the rules of construction for insurance contracts:

> 1.  Where, an insurance contract is plain and unambiguous, it should be construed as written, like other contracts.
> 2.  Insurance Contracts are construed most strongly against party drafting contract, and most favorably to the policyholder.
> 3.  Where terms of insurance contracts are ambiguous or doubtful, contract must be construed most favorably to insured and against insurer.
> 4.  Insurance contracts must be given a reasonable and sensible interpretation, and where policy is subject to two interpretations equally reasonable, that which gives the greater indemnity to the insured should be adopted.
> 5.  Where there is no practical difficulty in making the language of an insurance contract free from doubt, any doubtful provision in the policy should be construed against the insurer.

submitted their memoranda regarding summary judgment. Therefore, the trial court's Memorandum and Opinion regarding summary judgment does not cite or mention this language. However, this change to the Policy was noted at trial.

Since this change was not made known to the trial court for its decision on summary judgment, it should not be considered on de novo review of the trial court's decision on summary judgment. *See Mitchell v. Nelson*, 830 So. 2d 635, 640 (Miss. 2002) (citation omitted).

6. Terms of insurance policies are construed favorably to insured wherever reasonably possible, particularly exclusion clauses.

7. Although ambiguities of insurance contract should be construed against insurer, court cannot alter or change contract where terms are not ambiguous, despite resulting hardship on insured.

*State Farm Mut. Auto. Ins. Co. v. Scitzs,* 394 So. 2d 1371, 1372-73 (Miss. 1981). The trial court noted that there is no case exactly on point from this Court. The trial court then distinguished *Eaker*. *Eaker*, 216 F. Supp. 2d at 622. In *Eaker*, the insurance policy excluded coverage for damage from water, which it explicitly defined as including flood, surface water, overflow of a body of water, *and* "water from outside the plumbing system that enters through sewers or drains, or water which enters into and overflows from within a sump pump, sump pump well or any other system designed to remove subsurface water which is drained from the foundation area. . . ." *Id.*, 216 F. Supp. 2d at 622. The trial court reasoned that since the policy in *Eaker* explicitly excluded water from sewer or drain backup, it was distinguishable from this case, where 1) the water exclusion does not explicitly exclude water from a sewer or drain backup, and 2) damage from sewer or drain backup is listed under Additional Coverage. The trial court concluded that the language in the Policy is contradictory, if not ambiguous.

¶12. The standard of review for summary judgment motions is de novo. *See, e.g., Germany v. Denbury Onshore, LLC*, 984 So. 2d 270, 275 (Miss. 2008) (citations omitted). When deciding to grant or deny summary judgment, a court must review the record before it and take all the evidence in the light most favorable to the non-moving party. *Id.* The trial court's decision regarding summary judgment will be affirmed if the record before the trial court shows that there is no genuine issue of material fact and that the movant is entitled to

7

a judgment as a matter of law. *Id.* After a review of the legal precedent and rules of construction for contracts and insurance policies, we believe that the trial court correctly determined that the Policy is ambiguous. Therefore, there is a genuine issue of material fact as to whether or not the Policy covered Martin's claim, and USF&G was not entitled to judgment as a matter of law.

¶13.    Since this is an issue of first impression in this Court, we must rely on the legal principles and apply them to the facts in this case. This Court's precedent has restated the rules set out in *Scitzs*. It is now firmly established that if a contract is clear and unambiguous, then it must be interpreted as written. *See, e.g., Noxubee County Sch. Dist. v. United Nat'l Ins. Co.*, 883 So. 2d 1159, 1165 (Miss. 2004). A policy must be considered as a whole, with all relevant clauses together. *J&W Foods Corp. v. State Farm Mut. Auto. Ins. Co.*, 723 So. 2d 550, 552 (Miss. 1998). If a contract contains ambiguous or unclear language, then ambiguities must be resolved in favor of the non-drafting party. *Id.*; *Crum v. Johnson*, 809 So. 2d 663, 666 (Miss. 2002). Ambiguities exist when a policy can be logically interpreted in two or more ways, where one logical interpretation provides for coverage. *Crum*, 809 So. 2d at 666; *Universal Underwriters Ins. Co. v. Buddy Jones Ford Lincoln-Mercury, Inc.*, 734 So. 2d 173, 176 (Miss. 1999). However, ambiguities do not exist simply because two parties disagree over the interpretation of a policy. *HeartSouth, PLLC v. Boyd*, 865 So. 2d 1095, 1105 (Miss. 2003). Exclusions and limitations on coverage are also construed in favor of the insured. *Noxubee County Sch. Dist.*, 883 So. 2d at 1165. Language in exclusionary clauses must be "clear and unmistakable," as those clauses are strictly interpreted. *Miss. Farm Bureau Mut. Ins. Co. v. Jones*, 754 So. 2d 1203, 1204

(Miss. 2000). Nevertheless, "a court must refrain from altering or changing a policy where terms are unambiguous, despite resulting hardship on the insured." *Titan Indem. Co. v. Estes*, 825 So. 2d 651, 656 (Miss. 2002) (citing *Scitzs*, 394 So. 2d at 1373).

¶14. Taken as a whole, and in the light most favorable to the non-moving party, the relevant portions of the Policy are not clear and unambiguous, and could lead a reasonable person to two interpretations without straining to create ambiguity. First, one could interpret subsection I.A.4.v. regarding sewer or drain backup to fall under the "unless otherwise stated" exception to the general water exclusion in subsection I.C.1.a. Subsection I.A.4.v. does clearly begin with "[w]e will pay for direct physical loss" from sewer or drain backup. Under this interpretation, the Policy covers damage caused by sewer or drain backup despite the overall water exclusion – even in the case of damage from flood, surface water, or overflow of any body of water.[3]

¶15. On the other hand, one could understand subsection I.C.1.a. to apply to all types of coverage under subsection I.A. whenever certain types of water contributed to the damage. Under this view, the Policy excludes coverage for damage caused by sewer or drain backup if the damage occurred in part because of flood, surface water, or overflow of any body of water.

¶16. Since the relevant provisions in the Policy are subject to two reasonable interpretations and because exclusion clauses must be strictly construed, the terms of the Policy will be interpreted in favor of the non-drafter, the insured. In other words, the Policy

---

[3] These types of water seem to be the relevant ones listed in the Policy in light of the facts and arguments in this case.

will be interpreted as a whole to cover damage caused by water from sewer or drain backup, even when some damage may have resulted from flood, surface water, or overflow or any body of water.

¶17.   Therefore, we believe that USF&G failed to prove that there was no genuine issue of material fact regarding whether or not the Policy covered Martin's claim. *See, e.g.*, ***Denbury Onshore, LLC***, 984 So. 2d at 275.  The issue of coverage under the Policy needed to be decided by a jury, and the jury was properly given the opportunity to decide this issue.  The jury was given the following jury instruction:

> If you find that the Plaintiff, DEBBIE MARTIN d/b/a CARTMELL GALLERY has established by a preponderance of the evidence that the Plaintiff is entitled to recover for claims under any one or all of the following provisions of the policy:
>     1) Sewer or Drain Backup and/or
>     2) Fine Arts and/or
>     3) Electronic Data Processing Systems
> you will then consider the issue of the Plaintiff, DEBBIE MARTIN d/b/a CARTMELL GALLERY's damages, separately under each coverage.

The jury then returned a verdict for Martin and checked the box next to the following text on the jury instruction: "We the jury find for the Plaintiff on her claim for coverage on sewer or drain backup and that the Plaintiff is entitled to damages in the amount of $39,329 for coverage under the sewer or drain backup coverage."  The jury also checked the boxes finding for Martin for fine arts and electronic data processing systems coverage and indicated the appropriate damage awards.

¶18.   Because there was a genuine issue of material fact for the jury regarding sewer or drain backup coverage under the Policy, the trial court correctly denied USF&G's motion for summary judgment on this point.

10

## II. Whether a Judgment Notwithstanding the Verdict Was Properly Denied.

¶19. USF&G also appeals the trial court's denial of its motion for JNOV on two grounds. The standard of review for the denial of a JNOV is de novo review. *See, e.g., **Adcock v. Miss. Transp. Comm'n***, 981 So. 2d 942, 948 (Miss. 2008). This Court has stated that "[a] motion for JNOV is a challenge to the legal sufficiency of the evidence, and this Court will affirm the denial of a JNOV if there is substantial evidence to support the verdict." ***Id.*** (citations omitted). "Substantial evidence" has been defined as "information of such quality and weight that reasonable and fair-minded jurors in the exercise of impartial judgment might have reached different conclusions." ***Id.***, 981 So. 2d at 948-49 (quoting ***Natchez Elec. & Supply Co. v. Johnson***, 968 So. 2d 358, 362 (Miss. 2007)). In reviewing the trial court's denial of a JNOV, this Court must "consider the evidence in the light most favorable to the appellee, giving that party the benefit of all favorable inference that may be reasonably drawn from the evidence." ***Spotlite Skating Rink, Inc. v. Barnes***, No. 2008-CA-00289-SCT, 2008 Miss. LEXIS 322, at *6 (Miss. Jun. 19, 2008) (quoting ***Ala. Great S. R.R. Co. v. Lee***, 826 So. 2d 1232, 1235 (Miss. 2002)). The denial of a JNOV will be reversed if "the evidence, as applied to the elements of party's case, is either so indisputable, or so deficient, that the necessity of a trier of fact has been obviated." ***White v. Stewman***, 932 So. 2d 27, 32 (Miss. 2006).

### A. Whether the Plaintiff Presented Sufficient Evidence to Prove Water Damage from Sewer or Drain Backup.

¶20. USF&G argues that Martin did not present sufficient evidence to prove that the water damage resulted from sewer or drain backup. However, the record reveals that there was

testimony that the Gallery smelled like it had been damaged from sewer backup. Martin testified that when she first went to investigate the damage on April 7, 2003, she noticed that there was an odor in the Gallery and that the water was dirty. Martin testified that on April 8, 2003, when Hewitt, the USF&G claim specialist, came, there was still an odor in the Gallery. She testified that "[i]t just smelled awful. It smelled like when someone goes to the bathroom and they don't flush the toilet and it's just been sitting there."

¶21. Cartmell testified about his observations of the water in the Gallery: "It was just brown and foul, foul smelling, foul looking. . . . It had an odor of sewage, raw sewage." Cartmell also stated that on April 8, 2003, the carpet was still wet and still smelled, and that the odor of "foul urine and sewage" got worse over the next few days. He testified that he and Martin had to replace the carpet in the Gallery.

¶22. Gardner, the carpet cleaner, testified that on April 8, 2003, there was a strong odor in the Gallery, which he found unusual because it was not normal for carpet to smell the day after a carpet cleaning. Gardner also testified that he used a blacklight to examine the damage to the carpet in the Gallery and the blacklight indicated that bacteria were present wherever the water had been. He testified that the presence of bacteria is consistent with the presence of sewage. Gardner also testified that the streets outside the Gallery were flooded on April 7, 2003.

¶23. Martin's expert witness, Monty Jackson, Director of Public Works for Meridian, testified that there may have been flooding on April 7, 2003, but there was also sewer and drain backup. Jackson testified that the sewer system was "either overloaded or stopped up." He testified that water was coming out of some drains due to the topography of the area in

which the Gallery was located and the difference in pressure on the drain pipes for storm water and sanitation water. Jackson testified that this was considered sewer and drain backup.

¶24. Hewitt, however, testified that he did not smell an odor of sewage when he investigated Martin's claim on April 8, 2003. He also testified that he did not find any evidence of sewer or drain backup in the Gallery.

¶25. There was no direct evidence regarding the source of the water that damaged the Gallery. Martin and Jackson both testified that they did not know for certain whether the water in the Gallery had gone through the sewer or drain system. Martin stated that she did not know anyone who saw raw sewage going into the Gallery. Gardner also stated that he did not know the source of the water.

¶26. USF&G's motion for JNOV argued that Martin did not present sufficient evidence regarding sewer or drain backup because 1) Martin's expert witness, Jackson, testified that the rainfall in question qualified as a "100-year rain event," and 2) there was no testimony that any of Martin's witnesses knew that the water that caused the damage had backed up through a sewer or drain.

¶27. After a de novo review of the record regarding evidence of damage from sewer or drain backup, we are of the opinion that the trial court properly denied USF&G's motion for JNOV on this ground. The record reveals that there was substantial evidence on the issue of sewer or drain backup such that a reasonable jury could have reached different conclusions. *See, e.g.*, **Adcock**, 981 So. 2d at 948. Since there was contradictory testimony regarding the cause or causes of the damage to the Gallery, reasonable and impartial jurors

13

could have disagreed about whether or not there had been sewer or drain damage – in conjunction with flood damage or not. *See, e.g.*, ***id.*** at 948-49 (citation omitted). Martin, Cartmell, and Gardner testified that there was an odor of sewage in the Gallery. Jackson testified that he believed there had been drain and sewage backup on April 7, 2003. Neither side could provide direct evidence of the cause or causes of the damage. The evidence was not "so indisputable, or so deficient" that there was no need for a jury to determine whether sewer or drain backup caused the damage. ***White***, 932 So. 2d at 32.

¶28. Taking the facts in the light most favorable to the non-moving party and drawing all reasonable, favorable inferences from the evidence, we find that there was legally sufficient, substantial evidence such that reasonable jurors could have reached different conclusions as to the cause of the damage to Martin's gallery. *See, e.g.*, ***Spotlite Skating Rink, Inc.***, 2008 Miss. LEXIS 322, at *6. Thus, the JNOV was properly denied as to legal sufficiency of the evidence of sewer or drain backup.

**B.      Whether the Plaintiff Presented Sufficient Evidence to Prove Fine Arts Coverage.**

¶29.    USF&G also argues that Martin did not present sufficient evidence to prove that she deserved damages under the fine arts provision of the Policy. The pieces of art in question, for which the jury awarded $2,215 in damages under the fine arts provision in the Policy, are:

20.      Original drawings (Todd Eldridge?) $500.00
22.      Terry Cherry- original water color $35.00
23.      2 antique paintings (cost to restore) $350.00
24.      2 Original paintings (Les Greens) $350.00 = $700.00
33.      Antique wooden paintings (3) $1,800.00
34.      Antique framed painting [no value provided]

14

Section I.A.4.t. of the Policy, which falls under the subsection for Additional Coverage, states in relevant part:

> t.    Fine Arts
> (1) We will pay for direct physical loss to Covered Property caused by or resulting from a Covered Cause of Loss as described in this Additional Coverage.
> Under this Additional Coverage Covered Property means fine arts:
>     (a) Which are owned by you; or
>     (b) Similar property of others that is in your care, custody, or control;
> while on exhibition or otherwise, anywhere in the United States or Canada, and for which a limit of insurance is shown in the Property Coverage Part Declarations.
> This Additional Coverage does not apply to fine arts that are "stock."

"Stock" is then defined in Section V of the Policy, which states in relevant part:

> 17.    "Stock" means:
> a. Merchandise held in storage, for sale, or sold by you but not delivered; . . .

¶30.    The record does not contain much testimony regarding Martin's fine arts claim. Martin testified that some of the items in the Gallery were owned by the Gallery and some had been acquired through a consignment arrangement and belonged to others. Martin testified that, of the pieces of art for which she sought coverage under the fine arts provision, only the Terry Cherry was acquired through consignment and thus belonged to the artist, not the Gallery.

¶31.    After a de novo review of the record regarding evidence of damage to fine arts property in the Gallery, we find that the trial court improperly denied USF&G's motion for JNOV on this issue. The record reveals that there was not "substantial evidence" that most

of the items in question qualified for coverage under the Policy. The JNOV should have been granted to decrease the award accordingly.

¶32. First, we must apply the general rules and principles regarding contract and insurance policy construction to the relevant provisions in the Policy to resolve an ambiguity. The provisions in the Policy relating to fine arts, read as a whole, are ambiguous in the context of a consignment arrangement where artwork that is the artist's property, but in the "care, custody, or control" of a gallery owner, is held for sale. Since ambiguities must be construed in favor of the insured, we interpret the fine arts provision to cover damage to artwork that belongs to the artist, but is under the "care, custody, or control" of a gallery owner, despite the fact that the artwork is offered for sale. *See, e.g.*, *Scitzs*, 394 So. 2d at 1372-73.

¶33. Taking all the evidence in the light most favorable to Martin, we conclude that reasonable, impartial jurors could not have reached different conclusions as to whether all the artwork in question qualified for fine arts coverage. *See, e.g.*, ***Spotlite Skating Rink, Inc.***, 2008 Miss. LEXIS 322, at \*6. Martin presented evidence that the Policy included fine arts coverage, and resolving the ambiguity in her favor, we find that the only piece of art that qualifies for coverage is the Terry Cherry painting, valued at $35. Martin testified that the other pieces of art were inventory and are thus excluded under the Policy as "stock." Therefore, we find that the JNOV was improperly denied as to fine arts coverage and the jury award under Count II should be decreased to $35.

III. **Whether Evidence of the Plaintiff's Flood Insurance Claim and Carpet Cleaning from 2004 Was Properly Excluded.**

¶34.   USF&G claims that the trial court should have allowed it to present evidence of Martin's flood insurance claim and carpet cleanup from an incident in 2004.  Before trial, USF&G informed the trial court that it wished to introduce 1) evidence that Martin bought a flood insurance policy from a different insurance company subsequent to the incident at issue and made a successful claim for damages from a flood in 2004, and 2) a handwritten receipt from Gardner's Carpet Cleaning showing that the cleaning services after the 2004 flood were the same as the cleaning services in 2003.  USF&G argued that this was relevant because a jury could draw an inference that the damage in 2003 resulted from a flood because the cleaning services in 2004 were the same as those performed in 2003, and because another insurance policy covered the damage under its flood policy.  Martin argued that this evidence was irrelevant because it concerns a different event.

¶35.   The trial court admitted the carpet cleaning receipt for services performed in 2003 and 2004, but redacted the writing concerning the 2004 cleaning.  Also, the trial court sustained Martin's objections to USF&G's attempt to question Gardner about the redacted writing on the receipt.  The record does not reflect that USF&G attempted to question Martin about the 2004 flood insurance policy.

¶36.   On appeal, USF&G only challenges the redaction of the receipt and the trial court's refusal to allow USF&G to cross-examine Gardner about the redacted writing.

¶37.   When reviewing a trial court's decision regarding evidentiary matters, the standard of review is abuse of discretion.  *Payne v. Whitten*, 948 So. 2d 427 (Miss. 2007) (citation omitted).  When determining whether or not a trial court abused its discretion in making a decision regarding the admissibility of evidence, "this Court will review the record to

17

determine whether the trial court employed the proper legal standards." *McMillan v. Rodriguez*, 823 So. 2d 1173, 1177 (Miss. 2002). The relevance of evidence is governed by Mississippi Rules of Evidence 401 through 403.

¶38.    Our first inquiry must be whether or not the evidence is relevant, that is, if it tends to make a fact of consequence more or less probable than without the evidence. Miss. R. Evid. 401. The fact that Gardner considered his cleaning services in 2004 the same as the services he performed in 2003 does not tend to make it less likely that Martin's gallery was damaged by sewer or drain backup in 2003. Without the information about Martin's subsequent flood insurance policy with a different insurance company, the fact that Gardner considered the cleaning in 2004 to be the same as in 2003 is completely irrelevant.

¶39.    Even if USF&G had attempted to question Martin about her 2004 flood insurance policy and argued on appeal that it should have been allowed to do so, the link between the invoice and the cause or causes of the 2003 damage remains too tenuous and convoluted. First, the jury would have to infer that Gardner's opinion regarding the similarity in cleaning services in 2003 and 2004 was an indication that the damage to the Gallery in both years resulted from the same cause. Second, the jury would have to infer from the fact that Martin made a successful flood insurance claim with a different company in 2004 that the damage in 2004 resulted entirely from a flood and not in part from sewer or drain backup. Third, the jury would have to conclude from the first two inferences that the damage in 2003 resulted entirely from a flood and not in part from sewer or drain backup. The logical connections underlying these inferences are highly questionable, as is the probative value of the evidence.

18

¶40. The redacted information from the receipt is irrelevant and inadmissible on its own, as well as when it is considered along with the information about Martin's flood insurance claim and carpet cleanup from 2004. Therefore, it is our opinion that the trial court did not abuse its discretion, that it properly redacted the carpet cleaning receipt, and that it properly sustained objections to USF&G's attempts to cross-examine Gardner regarding the redaction.

**IV.    Whether a Remittitur Was Properly Granted.**

¶41. Martin argues that the trial court erred when it granted USF&G's Motion for Remittitur. The first question here is whether the Policy limits coverage to a maximum of $25,000 or $50,000 for sewer or drain backup damage. Section I.A.4.v. of the Policy states in relevant part: "The most we will pay for this Additional Coverage is $25,000 or the Limit of Insurance shown in the Property Coverage Part Declarations for Sewer or Drain Backup, whichever is greater."

¶42. The Property Coverage Part Declarations for the original policy and the renewal both list two premises numbers, under which different types of coverage and corresponding dollar amounts are listed. Although there are two premises numbers, the address listed for both premises numbers is the same. The types of coverage and corresponding dollar amounts listed are identical as to both premises numbers 0001 and 0002. "Sewer or Drain Backup" and "$25,000" are listed under both premises numbers. Thus, the Property Coverage Part Declarations form appears to indicate that the maximum coverage for sewer or drain backup under the Policy is $50,000.

¶43. The standard of review for trial court decisions regarding a remittitur is the abuse of discretion standard. *See, e.g.,* ***Stringer v. Crowson***, 797 So. 2d 368, 370 (Miss. Ct. App.

19

2001) (citing ***Ross-King-Walker, Inc. v. Henson***, 672 So. 2d 1188, 1193 (Miss. 1996)). However, this Court has held that it "has the responsibility to see that such judicial discretion is exercised soundly and, if not, to reverse." ***Holmes County Bank & Trust Co. v. Staple Cotton Coop. Assoc.***, 495 So. 2d 447, 451 (Miss. 1986). The standard for granting a remittitur or additur is whether or not "the court finds that the jury was influenced by bias, prejudice, or passion, or . . . if the damages were contrary to the overwhelming weight of credible evidence." *See, e.g.*, ***Rodgers v. Pascagoula Pub. Sch. Dist.***, 611 So. 2d 942, 944 (Miss. 1992) (citation omitted).

¶44.  This Court "must look at the evidence in the light most favorable to the party in whose favor the jury decided, granting that party any favorable inferences that may reasonably be drawn therefrom." ***Lewis v. Hiatt***, 683 So. 2d 937, 941 (Miss. 1996). A jury award should not be disturbed "unless its size, in comparison to the actual amount of damage, shocks the conscience." ***Entergy Miss., Inc. v. Bolden***, 854 So. 2d 1051, 1058 (Miss. 2003) (citation omitted). It is well-established that jury awards "are not merely advisory and will not under the general rule be set aside unless so unreasonable in amount as to strike mankind at first blush as being beyond all measure, unreasonable in amount and outrageous." ***Rodgers***, 611 So. 2d at 945 (citations omitted). This Court has held that "the amount of damages awarded is primarily a question for the jury." ***Id.*** (citations omitted).

¶45.  Taking the evidence in the light most favorable to Martin, in whose favor the jury found, we believe that the maximum coverage for sewer or drain backup is $50,000, and that the record reveals competent evidence in support of the jury award. *See, e.g.*, ***Lewis***, 683 So. 2d at 941. Martin's list of damaged items indicates that the approximate amount of damage

caused to the Gallery totaled $40,019.44. After adding the amount of damage done to items that were not included in the fine arts and electronics claims (since these are covered in Counts II and III of the jury verdict), we find that Martin suffered $32,132 in general damage to the Gallery. A jury award of $39,329, while approximately $7,000 more than the itemized damage to non-fine arts and non-electronics property, does not demonstrate bias, prejudice, or passion, nor is it against the overwhelming weight of credible evidence.[4] *See, e.g.*, ***Rodgers***, 611 So. 2d at 944. In other words, it does not "shock the conscience" and should not have been remitted by the trial court. *See, e.g.*, ***Entergy Miss., Inc.***, 854 So. 2d at 1058. As stated by this court in ***Rodgers***, jury awards "are not merely advisory." ***Rodgers***, 611 So. 2d at 945 (citations omitted). Thus, the trial court abused its discretion in remitting the jury award, and the jury award should be reinstated.

**V.      Whether Summary Judgment Was Properly Granted as to the Plaintiff's Punitive Damages Claim.**

¶46.    Martin argues on cross-appeal that the trial court should have allowed the jury to decide her punitive damages claim for USF&G's denial of coverage. The issue of punitive damages was first raised in USF&G's motion for summary judgment. USF&G argued that a punitive damages claim should not be submitted to the jury because 1) USF&G did not

---

[4] It should be noted that there was testimony that a painting by Cartmell worth $4,800 had been damaged, but was not listed on Martin's list of damaged items. USF&G objected to Martin's attempt to increase the total amount of damage on her list of damaged items by $4,800, but the court overruled the objection. Since this painting was done by Cartmell, who is a partner in the Cartmell Gallery, it is possible that the jury considered this painting stock or regular property and added it when calculating the jury award under Count I – especially since the Count II fine arts award is only $2,215. In that case, the jury award would be approximately $2,400 more than the actual amount of damage to non-fine arts and non-electronics items.

21

deny Martin's claim in bad faith, 2) USF&G had an "arguable basis" for denying the claim, and 3) USF&G did not exercise malice, gross negligence, or reckless disregard. Martin argued in response that there was no arguable basis for USF&G's denial of her claim, and that USF&G "committed a willful or malicious wrong, or acted with gross or reckless disregard." **Sobley v. S. Natural Gas Co.**, 302 F.3d 325 (5th Cir. 2002).

¶47. After a hearing, the trial court concluded that there were no genuine issues of material fact warranting the punitive damages claim to be decided by a jury. The trial court found that because the Policy was ambiguous, USF&G had an arguable basis for denying the claim. The trial court also found that there was no showing of malice, gross negligence, or wanton disregard by USF&G. The trial court stated that "USF&G merely received a claim from the Plaintiff, investigated the cause of the loss, interpreted its policy and denied coverage. There is no evidence before the Court that the Defendant conducted itself in such a way as to call for the imposition of punitive damages."

¶48. As stated above, the standard of review for a grant of summary judgment is de novo review. *See, e.g.,* **Germany v. Denbury Onshore, LLC**, 984 So. 2d 270, 275 (Miss. 2008) (citations omitted); *see also*, **Jenkins v. Ohio Cas. Ins. Co.**, 794 So. 2d 228, 232 (Miss. 2001) (affirming trial court's denial of punitive damages claim on summary judgment). When deciding to grant or deny summary judgment, a court must review the record before it and take all the evidence in the light most favorable to the nonmoving party. **Denbury Onshore, LLC**, 984 So. 2d at 275. The trial court's decision regarding summary judgment will be affirmed if the record before the trial court shows that there is no genuine issue of material fact and that the movant is entitled to a judgment as a matter of law. **Id.** A punitive damages

22

claim should be decided by a jury if 1) there was no arguable or legitimate basis for denying coverage, and 2) the insurance company acted with malice or gross and reckless disregard for the rights of the insured. *See, e.g.*, *Jenkins*, 794 So. 2d at 232-33 (citing *State Farm Mut. Auto. Ins. Co. v. Grimes*, 722 So. 2d 637, 641 (Miss. 1998)).

¶49. This Court held in *Jenkins* that "[p]unitive damages should be assessed with caution and within narrow limits as an example and warning." *Jenkins*, 794 So. 2d at 232 (citation omitted). This Court has also stated that punitive damages should not be imposed simply because a mistake was made regarding coverage. *Grimes*, 722 So. 2d at 641. The plaintiff bears a "heavy burden" when seeking punitive damages. *Sentinel Indus. Contr. Corp. v. Kimmins Indus. Serv. Corp.*, 743 So. 2d 954, 972 (Miss. 1999).

¶50. Here, the insurance company had an arguable and legitimate basis to deny Martin's claim under its view that the Policy's water exclusion precluded recovery. *See, e.g.*, *Jenkins*, 794 So. 2d at 232-33 (citation omitted). The trial court found that the Policy was ambiguous as to coverage, and we agree with that conclusion. Accordingly, it follows that an insurance company could legitimately deny coverage under a policy that has ambiguous provisions for coverage. Also, taking the evidence in the light most favorable to Martin, there was no evidence before the trial court of malice, recklessness, or gross disregard of Martin's rights by USF&G. *See, e.g.*, *id.* USF&G may have incorrectly denied Martin's claim, but Martin did not produce any evidence that USF&G's conduct constituted willful conduct in bad faith, thus failing to meet its "heavy burden." *Sentinel Indus. Contr. Corp.*, 743 So. 2d at 972. Therefore, based on the record before the trial court, there was no genuine issue of material fact and USF&G was entitled to a judgment as a matter of law. After a de novo review of

the evidence before the trial court, we find that summary judgment was properly granted as to the punitive damages claim.

<u>CONCLUSION</u>

¶51.    After a review of the issues raised on appeal, this Court finds that 1) the trial court's denial of summary judgment regarding ambiguity and coverage under the Policy should be affirmed; 2) the trial court's denial of JNOV on the ground of sufficiency of the evidence of sewer or drain backup should be affirmed; 3) the trial court's redaction of the carpet cleaning receipt and exclusion of testimony regarding Martin's 2004 flood claim should be affirmed; and 4) the trial court's grant of summary judgment regarding Martin's punitive damages claim should be affirmed.  Furthermore, we find that 1) the trial court's denial of JNOV regarding Martin's fine arts claim should be reversed, and the jury award should be remitted to $35 under Count II of the verdict; and 2) the trial court's grant of remittitur should be reversed, and the jury's verdict of $39,329 under Count I of the verdict should be reinstated. The new damage award would, therefore, be $42,448.

**¶52.    AFFIRMED IN PART; REVERSED AND RENDERED IN PART.**

**SMITH, C.J., WALLER AND DIAZ, P.JJ., CARLSON, RANDOLPH AND LAMAR, JJ., CONCUR.  EASLEY, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION.  DICKINSON, J., NOT PARTICIPATING.**